USES MANUFACTURING, INC.
and USES, Inc., Plaintiffs,

v.

ROCKY MOUNTAIN INSTITUTE and
Research New England Power
Service Co., Defendants.

No. 3:99CV315(JBA).

United States District Court,
D. Connecticut.

March 17, 2000.

---

Edward R. Scofield, Douglas John Varga, Zeldes, Needle & Cooper, Bridgeport, CT, for Plaintiffs.

Joseph W. Bibisi, Richard P. Kuzmak, McVane, Bellobuono, Kuzmak, Wiezalis & Bibisi, Hartford, CT, Lee F. Johnston, Holland & Hart, Denver, CO, Donald A. Degnan, Timothy P. Getzoff, Holland & Hart LLP, Boulder, CO, George D. Royster, Jr., John Burns Farley, Mark Theodore Livesay, Halloran & Sage, Hartford, CT, for Defendants.

## RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 15—Parts 1 and 2]

ARTERTON, District Judge.

Defendant New England Power Service Company (NEPSCo) moves pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction, asserting that the Connecticut long-arm statute does not provide authority for this Court's jurisdiction. [Doc. # 15—Part 1]. Alternatively, NEPSCo moves to transfer this lawsuit to the District Court of Massachusetts pursuant to 28 U.S.C. § 1404 or 28 U.S.C. § 1631. [Doc. # 15—Part 2].

### INTRODUCTION

Plaintiff USES Manufacturing and USES, Inc. ("USES"), accuse Defendants Rocky Mountain Institute Research, Associates, Inc. d/b/a E–Source, Inc. ("E–Source, Inc.") and NEPSCo of disparagement and trade libel in violation of the Lanham Act, 15 U.S.C. § 1125(a), tortious interference with contractual relations and prospective advantage, unfair competition and violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn.Gen. Stat. § 42–110a *et seq.*

Defendant NEPSCo is a Massachusetts corporation with its principal place of business in Massachusetts. At the time this lawsuit was commenced (February 1999), NEPSCo was registered and authorized to transact business in Connecticut.[1] NEPSCo first became authorized to transact business in Connecticut in 1961, *see* Pl.'s Ex. A, *see* Ramsauer Aff. at ¶ 7, and continued to file such registration forms with the Secretary of the State of Connecticut, most recently on March 27, 1998. Not-

---

1. Although NEPSCo subsequently withdrew its registration to do business in Connecticut on March 21, 1999, such post-filing conduct does not destroy the Court's personal jurisdiction over NEPSCo. *Cf. Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 569 (2d Cir.1996) (assessing defendant's minimum contacts with forum in period of time leading up to and including the year suit was filed).

withstanding its registrations authorizing it to do business in Connecticut, NEPSCo's undisputed representation is that it "has not solicited any business in Connecticut by mail or otherwise since 1991," "has not produced or distributed any goods under any contracts in Connecticut since 1982," "has not entered into any contracts made in Connecticut or to be performed in Connecticut since 1987," and "has not produced, manufactured, or distributed any goods or services with the reasonable expectation that such goods or services were to be used or consumed in Connecticut" since 1987.[2] Ramsauer Aff. ¶¶ 4–9, Def.'s Ex. C.

## LEGAL DISCUSSION

### Motion to Dismiss for Lack of Personal Jurisdiction
### [Doc. # 15—Part 1]

The sole legal issue presented by NEPSCo's motion to dismiss is whether by registering and maintaining a certificate to do business in Connecticut, a foreign corporation is deemed to have consented to personal jurisdiction in Connecticut under Connecticut's long arm statute, Conn.Gen. Stat. § 33–929(a). Although a motion to dismiss for lack of personal jurisdiction would ordinarily also require examination of whether the exercise of such jurisdiction would meet with the minimum constitutional requirements of due process, *see Knipple v. Viking Communications, Ltd.*,

236 Conn. 602, 606, 674 A.2d 426 (1996),[3] NEPSCo affirmatively waived the due process ground, and therefore no jurisdictional discovery was required. *See* Tel. Status Conference Tr. at 6–7 (Doc. # 30); Tr. of Oral Argument on Mot. To Dismiss (Nov. 30, 1999) at p. 16, 11. 18–25, (Doc. # 49).

The relevant provision of Connecticut's long arm statute, Conn.Gen.Stat. § 33–929(a) provides:

> The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation. When the registered agent is other than the Secretary of the State and his successors in office, service may be effected by any proper officer or other person lawfully empowered to make service by leaving a true and attested copy of the process, notice or demand with such agent or, in the case of an agent who is a natural person, by leaving it at such agent's usual place of abode in this state.

NEPSCo argues that the structure of Conn.Gen.Stat. § 33–929, in paragraphs (a), (e) and (f) together, demonstrates that jurisdiction may not be established simply by service of process in accord with paragraph (a). It reasons that the absence in paragraph (a) of the language "shall be subject to suit in this state" compared to its use in paragraph (e)[4] and (f)[5] supports

2. NEPSCo asserts that "[t]he continued filing of forms with the Connecticut Secretary of State after 1987 was the result of bureaucratic routine and did not reflect an affirmative determination to continue to transact business in Connecticut." Ramsauer Aff. at ¶ 6.

3. The court must first "decide whether the applicable state longarm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." *Knipple,* 236 Conn. at 606, 674 A.2d 426 (1996).

4. Conn.Gen.Stat. § 33–929(e) provides: "Every foreign corporation which transacts business in this state in violation of section 33–

920, *shall be subject to suit* in this state upon any cause of action arising out of such business." (emphasis added).

5. Conn.Gen.Stat. § 33–929(f) provides: "Every foreign corporation *shall be subject to suit* in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or with-

its contention that the agent registration provision in Section 33–929(a) simply provides the manner for service of process, but does not establish personal jurisdiction. NEPSCo argues that "[t]he Legislature's omission of any express language regarding jurisdiction from Section 33–929(a) must be viewed as purposeful, in light of the express inclusion of such language as cited above in Section 33–929(e) and (f). *See M. DeMatteo Construction Company v. City of New London,* 236 Conn. 710, 717, 674 A.2d 845 (1996)." Def.'s Reply Mem. at 7 (Doc. # 28).

In opposition, Plaintiff asserts that Conn.Gen.Stat. § 33–929(a) provides Connecticut court jurisdiction over foreign corporations authorized to transact business in Connecticut on the basis of consent, relying on then-Chief Justice Peters' decision in *Wilkinson v. Boats Unlimited, Inc.,* 236 Conn. 78, 670 A.2d 1296 (1996). Although USES properly concedes that *Wilkinson* was only analyzing whether the district court properly found jurisdiction under two other provisions of the long arm statute (now codified at Conn.Gen.Stat. § 33–929(e) and (f) respectively), it points to dicta in the majority opinion:

> "[b]y its express terms Section 411(a),[6] service on the secretary of state was proper to vest jurisdiction in the trial court only if [defendant] was in fact 'authorized to do business in this state....'"

*Id.* at 84, 670 A.2d 1296. There is no discussion in *Wilkinson* of the issue of whether service on the Secretary of the State or other registered agent for service of process would confer jurisdiction over a

out the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." (emphasis added).

foreign corporation authorized to do business in Connecticut, only an apparent assumption that it would. Other than this dictum, the parties agree there are no other Connecticut Supreme Court cases directly considering this question.

While the Connecticut Supreme Court has not squarely considered this issue, the Connecticut Appellate Court did so in *Wallenta v. Avis Rent A Car System,* 10 Conn. App. 201, 522 A.2d 820 (1987).[7] *Wallenta* held that where a foreign corporation complied with the requisites of Section 33–411(a) (now § 33–929(a)), it had "consented to the exercise of jurisdiction by the courts of this state," whether or not the cause of action arose out of activities which occurred in another state and were unconnected to the activities of the corporation in Connecticut. *Wallenta,* 10 Conn.App. at 207, 522 A.2d 820. However, the *Wallenta* court did not end the inquiry there, but also noted "the next question to be resolved is whether the assertion of personal jurisdiction offends due process." *Id.* At 208. Applying the two-step personal jurisdiction analysis, the *Wallenta* court found that foreign corporation Avis was subject to jurisdiction in Connecticut under Section 33–411(a) (now Section 33–929(a)) where it was undisputed that it had designated an agent for service and was authorized to do business in the state of Connecticut. However, the court remanded the case to the trial court for a hearing on whether plaintiff could establish sufficient facts to satisfy due process requirements. *Id.* at 209, 522 A.2d 820.

6. Conn.Gen.Stat. § 33–929(a) became effective January 1, 1997. It superseded Conn. Gen.Stat. § 33–411(a). The parties agree that for all intents and purposes, there is no material difference between the former § 33–411(a) and § 33–929(a).

7. The Appellate Court decided *Wallenta,* 10 Conn.App. 201, 522 A.2d 820 (1987) nine years before the Connecticut Supreme Court's decision in *Wilkinson,* 236 Conn. 78, 670 A.2d 1296 (1996).

Since *Wallenta,* the Connecticut superior courts have uniformly construed Section 33–929(a) as a consent to jurisdiction providing a statutory basis for their exercise of jurisdiction. *See e.g., Wender v. Trading Cove Associates,* 1999 WL 353474, *2 (Conn.Super.1999) ("[I]t should be noted that a corporation which complies with the requisites of the General Statutes ... by obtaining a certificate of authority has, in fact consented to the exercise of jurisdiction by the courts of this state"); *Pepe v. Christmas Tree Shops,* 1995 WL 299176, *1 (Conn.Super.1995) ("[T]he service of process upon the defendant was in accordance with § 33–411(a) and sufficient to confer jurisdiction from a statutory standpoint"); *Granger v. Marriott Corp.,* 1993 WL 454236, *1 (Conn.Super.1993) ("Having [complied with Conn.Gen.Stat. § 33–411(a) ] the corporation consented to the exercise of personal jurisdiction by this court").

Defendant argues that *Wallenta*'s interpretation of Section 33–929(a) as a consent to jurisdiction statute is erroneous and urges this Court to adopt the rationale of two decisions in this District,[8] which suggest that by remanding the case for further consideration of due process facts, the *Wallenta* court essentially interpreted Section 33–929(a) as "merely a consent to service of process statute which is always subject to federal due process oversight." *Mednet, MPC Corp. v. United Healthcare, Inc.,* 3:95cv2723 (AHN) (D.Conn. Aug. 15, 1996) (Nevas, J.) (Ruling on Motion to Dismiss) (unpublished).[9] *See e.g., Anderson v. Bedford Assoc., Inc.,* 1997 WL 631117 (D.Conn.1997) (Goettel, J.). Indeed, both cases appear to question *Wallenta*'s characterization of Section 33–

929(a) as a consent to jurisdiction statute, since such conclusion would have necessarily obviated any need to resort to due process analysis. *See e.g., Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196 (8th Cir.1990) (concluding that under Minnesota law a foreign corporation's appointment of agent for service of process was consent to jurisdiction and resort to due process analysis was unnecessary). *Compare Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179 (5th Cir.1992) (concluding that a foreign corporation that properly complies with Texas registration statute only consents to personal jurisdiction where such jurisdiction is constitutionally permissible). Nonetheless, both Connecticut district courts followed *Wallenta*'s two step analysis and resolved the motions to dismiss on the constitutional due process prong.

While both *Mednet* and *Anderson* call into question the import of *Wallenta*'s "consent to jurisdiction" nomenclature, neither decision altered the basic two-step approach actually employed in *Wallenta.* For instance, in *Mednet,* the district court granted a foreign corporation's motion to dismiss only after concluding that the record showing the foreign corporation's contacts were limited to isolated contacts with Connecticut ten years prior was insufficient to satisfy due process requirements even though it was registered to do business in Connecticut. *See Mednet,* Ruling on Motion to Dismiss at 12. Similarly in *Anderson,* the District Court granted the motions to dismiss for lack of personal jurisdiction on the grounds that "even if we were to hold that Connecticut's long arm statute, Conn.Gen.Stat.Ann. § 33–

**8.** The only reported case directly contradicting *Wallenta* is *Connecticut General Life Ins. Co. v. Grodsky Service, Inc.,* 743 F.Supp. 107 (D.Conn.1990). In *Grodsky,* the district court concluded without mention of *Wallenta* that Section 33–929(a) and the other "service of process provisions may only be invoked in accordance with subsection (c)'s grant of jurisdictional authority." *Id.* at 109. Notwithstanding *Grodsky*'s interpretation of Section 33–929(a), the motion to dismiss was decided

on other grounds, namely that the defendant was properly named in the suit under Connecticut's rules of interpleader.

**9.** Although neither party referenced this unpublished case in its briefing, it was referenced in *Anderson v. Bedford Assoc., Inc.,* 1997 WL 631117 (D.Conn.1997), was provided to the parties and addressed at oral argument. *See* Oral Argument Tr. at 5 (Doc. 49).

929(a) confers personal jurisdiction over [the foreign corporation] based upon its registering to do business in Connecticut, we still determine subjecting [the foreign corporation] to personal jurisdiction before this court in this matter would violate due process requirements." *Anderson,* 1997 WL 631117, *3.

 Irrespective of their nuanced refinement of *Wallenta*'s characterization of Section 33–929(a) as a statutory consent to service as opposed to consent to jurisdiction, neither *Mednet* nor *Anderson* materially alter *Wallenta*'s central holding that Section 33–929(a) may provide a basis for jurisdiction over foreign corporations subject to due process requirements. Where, as here, any due process challenge has been voluntarily waived,[10] the Court finds Section 33–929(a) provides a statutory basis for personal jurisdiction over NEPSCo.[11]

Accordingly, NEPSCo's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction is DENIED.

## Motion to Transfer Case to the District of Massachusetts
### [Doc. # 15—Part 2]

In the alternative, NEPSCo moves to transfer this lawsuit to the District of Massachusetts under 28 U.S.C. § 1404 or 28 U.S.C. § 1631. In support of its motion for transfer, NEPSCo states: "all of the operative events occurred in Massachusetts, . . . a majority of the party and non-party witnesses anticipated to be called to testify at trial, including plaintiff's Massachusetts independent distributors who are expected to be plaintiff's key fact witnesses, will find attending trial in Massachusetts more con-

venient; and all defendant's business records are in Massachusetts...." Def.'s Mem. of Law in Support of its Motion to Dismiss at 2, n. 1.

 It is well settled that "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equipment Corp.,* 980 F.2d 110, 117 (2d Cir.1992). The burden to transfer venue under Section 1404(a) is on the moving party, NEPSCo, to demonstrate clearly and convincingly that transfer should be made. *See Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc.,* 821 F.Supp. 848 (D.Conn.1993) (denying motion to transfer which would merely transfer the inconvenience from defendant to plaintiff and therefore declining to disturb plaintiff's choice of forum).

 In determining whether transfer is warranted, the following factors are considered relevant: (1) the convenience of the parties; (2) the convenience of material witnesses; (3) plaintiff's choice of forum; (4) where the operative facts occurred; (5) the availability of process to compel appearance of unwilling witnesses; and (6) trial efficiency and other considerations affecting the interests of justice.

 "[T]he first two factors—that of the convenience of the parties and witnesses—are generally the most important factors in a court's determination of whether to grant a motion to transfer." *Hill v. Golden Corral Corp.,* 1999 WL 342251 (E.D.N.Y.1999) (citation omitted). While

---

10. Personal jurisdiction may be voluntarily waived by a party. *See Datskow v. Teledyne, Inc.,* 899 F.2d 1298, 1302–3 (2d Cir.1990).

11. Following oral argument, at the Court's request, the parties provided the voluminous legislative history of Section 33–929(a) and its predecessor as well as supplemental briefing addressing the legislative history. Given the uniformity of construction of Section 33–929(a) by almost all the Connecticut courts, it now appears that resort to legislative history is unnecessary. Furthermore, the legislative

history is inconclusive as to the meaning of Section 33–929(a). As the parties' exhaustive supplemental briefing indicates, there exist isolated snippets of legislative history (which expressly incorporated the commentary from the Model Business Corporation Act on which the Connecticut Business Corporation Act was patterned and to which some Connecticut courts have looked for guidance) that could arguably support either construction of Section 33–929(a). *Compare* Doc. # 43 *with* Doc. # 46.

NEPSCo is a Massachusetts corporation, the USES plaintiffs are both Connecticut corporations and the other defendant, E–Source is a Colorado corporation to whom the convenience factor in a Connecticut or Massachusetts forum would be negligible. A transfer to Massachusetts would largely shift the current inconvenience of traveling between neighboring Massachusetts and Connecticut from NEPSCo to USES. As far as convenience of witnesses, NEPSCo does not identify any witnesses other than USES's witnesses or indicate any witness not subject to this Court's subpoena power under Fed.R.Civ.P. 45(c)(3)(A)(ii). NEPSCo's only identified prospective witnesses, David Pileggi and Timothy Roughan, *see* Pileggi Aff, ¶ 3, (Ex. D), are still apparently NEPSCo employees, therefore militating against claimed witness inconvenience since NEPSCo could accommodate these individuals' travel to Connecticut. Similarly, NEPSCo's suggestion of undue burden because most of its documentation in this case is located in Massachusetts is unpersuasive absent any showing of what would be required to transport it to Connecticut. NEPSCo does not indicate whether it anticipates calling any non-party witnesses and or what their testimony would include, making it impossible for the Court to determine their relevance or importance to this case. Similarly, there is no indication whether these witnesses would be unwilling to voluntarily travel to Connecticut, or would be unable to do so without extreme hardship. Accordingly, NEPSCo has not met its burden of demonstrating that the convenience of the parties and non-party witnesses warrants transfer.

Next, plaintiff USES's choice of forum is generally entitled to considerable weight. NEPSCo contends that such weight should not be accorded plaintiffs' choice of forum since all of the conduct giving rise to this action took place in Massachusetts. However, "the case law recognizes that a plaintiff's choice of forum is accorded less weight only when that forum is neither the plaintiff's home nor place where the operative facts occurred." *Hill v. Golden Corral Corp.*, 1999 WL 342251 (E.D.N.Y.1999).

Since the USES entities have filed this action in the state where they are incorporated and maintain their principal places of business, their chosen forum is entitled to substantial consideration.

It has not been made clear whether or how Massachusetts law would apply to any of the claims in this case. However, even if Massachusetts law applies to some of plaintiffs' claims, there is no suggestion that these claims raise complex issues of foreign law which this Court would be unable to apply if necessary. Thus, the potential application of foreign law does not weigh in favor of transfer.

Finally, NEPSCo does not demonstrate how efficiencies would be achieved by a transfer of this action to Massachusetts or how interests of justice will otherwise be furthered in light of this Court's determination that it has personal jurisdiction over NEPSCo, and Rocky Mountain Institute does not challenge this Court's personal jurisdiction.

After analyzing the relevant factors, the Court does not find that NEPSCo has demonstrated that this action should be transferred to the District Court of Massachusetts pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1631.

## CONCLUSION

For the foregoing reasons, Defendant NEPSCo's Motion to Dismiss and/or Transfer Venue [Doc. # 15—Parts 1 and 2] is DENIED.

IT IS SO ORDERED.