JOHNSEN, FRETTY & CO., LLC, Plaintiff,

v.

LANDS SOUTH, LLC and H/S Southern Graphics Systems, Inc., Defendants.

No. 3:07CV00541(DJS).

United States District Court, D. Connecticut.

Dec. 6, 2007.

Alan S. Gruber, Joshua H. Epstein, Dreier LLP, New York, NY, Joseph M. Pastore, III, Drier LLP, Stamford, CT, for Plaintiff.

E. Adam Webb, Webb Law Group, LLC, Atlanta, GA, Jennifer Morgan Delmonico, Murtha Cullina LLP, New Haven, CT, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The Plaintiff, Johnsen, Fretty & Co., LLC ("the Plaintiff"), brings this action against the Defendants, Lands South LLC ("Lands South") and H/S Southern Graphics Systems, Inc. ("Southern Graphics") (collectively, "the Defendants"), alleging breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count II). The Plaintiff also alleges that the Defendants owe it money pursuant to the equitable remedy of quantum meruit (Count III). Now pending before the court are the Defendants' motions to dismiss for lack of personal juris-

diction and improper venue, or, in the alternative, to transfer venue. (**Dkt. # s 25 & 28**). For the reasons set forth herein, the Defendants' motions (**dkt. # s 25 & 28**) are **DENIED**.

## I. FACTS

The following facts are alleged in the Amended Complaint. The Plaintiff, a limited liability company organized under the laws of Connecticut whose principal place of business is located in Stamford, Connecticut, is an investment banking firm that assists clients in the sale or disposition of their businesses. The Plaintiff's sole members, James E. Johnsen and Steven D. Fretty, are citizens of Connecticut. Lands South is a limited liability company organized under the laws of Alabama whose principal place of business is located in Opelika, Alabama. Southern Graphics is a corporation organized under the laws of Alabama whose principal place of business is also located in Opelika, Alabama.

At the Defendants' request, the Plaintiff agreed to assist the Defendants in the sale of a certain portion of their business, which consisted of outdoor advertising operations (principally roadside billboards) located in Alabama. On October 23, 2003, the Plaintiff and Southern Graphics entered into an investment banking agreement, and in late October or early November 2003, the Plaintiff and Lands South also entered into an investment banking agreement (collectively, "the Agreements").

Pursuant to the Agreements, the Plaintiff agreed to: (1) assist the Defendants with developing a strategy to sell their outdoor advertising assets; (2) assist the Defendants with initiating discussions with potential buyers to determine their level of interest in acquiring the Defendants' assets and operations; (3) aid the Defendants in responding to information requests from potential buyers; and (4) in cases where serious intentions to buy are expressed, assist the Defendants in negotiating purchase agreements and other relevant documentation. In addition, the Defendants agreed to compensate the Plaintiff for its services, including a payment of a "Success Fee" in the event of "*any* transaction in which [among others, Lands South and SGS] or their assignees sell the stock, or all or part of [their] assets." (*See* dkt. # 16 ¶ 11 (emphasis in original).) The Success Fee is defined as 3.5% of the aggregate amount of the consideration paid or owed in connection with a successful transaction ("the Deal Value"), except to the extent that the Defendants' Auburn, Alabama outdoor advertising assets ("the Auburn Assets") are included in such a transaction, in which case the portion of the Success Fee pertaining to the Auburn Assets is 1.0% of the portion of the Deal Value attributable to the Auburn Assets. The Success Fee is due and payable to the Plaintiff upon the closing of any such transaction.

The Plaintiff maintains that, for its part, it performed the services required by the Agreements. The Plaintiff alleges that, on or about November 30, 2006, the Defendants sold certain assets or stock of theirs, including the Auburn Assets, to Lamar Advertising Company ("the Lamar Deal"). The Plaintiff further alleges that, upon the closing of the Lamar Deal, the Defendants became obligated to pay to the Plaintiff a Success Fee. According to the Plaintiff, it sent an invoice to the Defendants on or about December 14, 2006, requesting payment of $180,000.00 for the portion of the Success Fee due and payable in connection with the disposition of the Auburn Assets. The Plaintiff alleges that, to date, the Defendants have refused to pay the Plaintiff for its services rendered under the Agreements, and that the Defendants have refused to provide the Plaintiff with any information regarding to the Lamar Deal,

rendering it impossible for the Plaintiff to determine whether it is owed any additional amounts pursuant to the Agreements.

## II. DISCUSSION

Pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") and 28 U.S.C. §§ 1404(a), 1406(a), the Defendants seek dismissal of the Plaintiff's claims for lack of personal jurisdiction and improper venue, or, alternatively, a transfer to a different venue, namely, the Middle District of Alabama. Specifically, the Defendants claim that: (1) Connecticut's long-arm statute does not reach them; (2) the exercise of personal jurisdiction over the Defendants in Connecticut violates due process; (3) it is unreasonable for this court to exercise personal jurisdiction over the Defendants. The Plaintiff argues that this court has personal jurisdiction over the Defendants, and that venue within the District of Connecticut is proper.

### A. STANDARD

A Rule 12(b)(2) motion seeks dismissal for lack of jurisdiction over the person. Fed.R.Civ.P. 12(b)(2). "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropo. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.* "Where ... a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir.2001). The court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor."

*Id.* "In diversity cases arising in [the Second] Circuit, personal jurisdiction is determined by the law of the state in which the district court sits . . . ." *Id.*

A Rule 12(b)(3) motion seeks dismissal for improper venue. Fed.R.Civ.P. 12(b)(3). "On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff." *Indymac Mortgage Holdings, Inc. v. Reyad,* 167 F.Supp.2d 222, 237 (D.Conn.2001). "The court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits, and [w]hen an allegation is so challenged [a] court may examine facts outside the complaint to determine whether venue is proper." *Id.* (alterations in original) (internal quotation marks omitted). "The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* (internal quotation marks omitted). Furthermore, "[i]f the venue is improper, the Court may dismiss or transfer the case to any district in which it could have been brought." *Id.* (citing 28 U.S.C. § 1406(a); *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir.1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court.")).

### B. PERSONAL JURISDICTION

Because discovery has not been completed in this case, and because no "full-blown evidentiary hearing" has been held, the Plaintiff need only make a *prima facie* showing, via pleadings and affidavits, that the court possesses personal jurisdiction over the Defendants. This is determined by the law of the state in which the this court sits, Connecticut. In determining personal jurisdiction, Connecticut utilizes a familiar two-step process. "First, the court must determine if the state's long-arm statute reaches the foreign corporation. Second, if the statute does reach the

corporation, then the court must decide whether that exercise of jurisdiction offends due process." *Bensmiller v. E.I. Dupont de Nemours & Co.,* 47 F.3d 79, 81 (2d Cir.1995) (citing *Greene v. Sha–Na–Na,* 637 F.Supp. 591, 595 (D.Conn.1986); *Frazer v. McGowan,* 198 Conn. 243, 246, 502 A.2d 905 (1986); *Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.,* 190 Conn. 245, 250, 460 A.2d 481 (1983)).

### 1. Connecticut's Long–Arm Statute

█ The first step of the court's analysis, then, is to review the applicable portion of Connecticut's long-arm statute, Conn. Gen.Stat. § 33–929(f),[1] which governs jurisdiction over foreign corporations. The relevant part of Conn. Gen.Stat. § 33–929(f) reads as follows:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in

this state or to be performed in this state; . . . .

Conn. Gen.Stat. § 33–929(f)(1).

With regard to Conn. Gen.Stat. § 33–929(f)(1), the Defendants argue that, because the Agreements were not "made" in Connecticut, the long-arm jurisdiction does not confer jurisdiction. The Defendants fail, however, to present any argument discussing whether the Agreements were "performed" in Connecticut.[2] The relevant language from the statute reads that the contract has to "made in this state *or* . . . performed in this state." *Id.* (emphasis added). Here, the word "or" is a connective used in disjunction. The Plaintiff does not need satisfy both the "made" and "performed" conditions of the statute. Thus, if the Plaintiff makes a *prima facie* showing that the Agreements were "performed" in Connecticut, the statute is satisfied, regardless of whether the Agreements were "made" in Connecticut.

The court finds that the Plaintiff has sufficiently shown that it performed the Agreements in Connecticut. First, the Plaintiff points to the Agreements themselves.[3] The Agreements both contain lan-

---

**1.** The Defendants also set forth arguments regarding another portion of 1 Connecticut's long-arm statute, Conn. Gen.Stat. § 52–59b. The Plaintiff, however, does not claim that Conn. Gen.Stat. § 52–59b applies to this case. Therefore, the court shall assume that personal jurisdiction in this case is not conferred by Conn. Gen.Stat. § 52–59b, and shall discuss Conn. Gen.Stat. § 33–929(f) only.

**2.** The court notes that the relevant section of the Defendants' memorandum of law is titled, *"The Contract Was Not Made Or Performed In Connecticut,"* and the first sentence of that section reads, "Jurisdiction also cannot be exercised over Defendants under Connecticut General Statutes § 33–929(f)(1) as the contract between Defendants and Plaintiff was neither made nor performed in Connecticut." (*See* dkt. # 26 § A.2.) Nevertheless, the remainder of this section then goes on to address only whether the Agreements were

"made" in Connecticut, and does not discuss whether the Agreements were "performed" in Connecticut. (*See id.*)

**3.** For a number of reasons, the court is permitted to consider the Agreements for the purposes of this Rule 12(b)(2) motion to dismiss. The Agreements are incorporated into the Amended Complaint by reference, which would allow the court to consider the Agreements even for the purpose of deciding a Rule 12(6)(6) motion to dismiss, where the general rule is that the court can look only at the facts alleged in the complaint. *See Estate of Axelrod v. Flannery,* 476 F.Supp.2d 188, 198–201 (D.Conn.2007). In addition, unlike the general standard for a Rule 12(b)(6) motion to dismiss, for a Rule 12(b)(2) motion to dismiss, the court may examine "affidavits and other evidence that the . . . conduct was sufficient for the court to exercise personal jurisdic-

guage that reads as follows: "The State of Connecticut shall have jurisdiction over this Agreement, and this Agreement will be governed by and construed in accordance with the laws of the State of Connecticut." (Dkt. # 32, Exs. A & B.) In the court's view, this language contemplates that the contract would be performed in Connecticut.

Second, the Plaintiff maintains that it did, in fact, perform its contractual obligations in Connecticut, and the Defendants do not argue otherwise. The Plaintiff claims that it: (1) worked with the Defendants to develop a strategy to sell the Defendants' assets; (2) made numerous telephone calls, faxes, e-mails, and mailings to and from the Defendants, whereby the Plaintiff gained the knowledge about the Defendants' business necessary to effectively market the Defendants' assets; (3) invested significant hours of reviewing and analyzing the detailed information forwarded by the Defendants; (4) developed a "Descriptive Memorandum," which contained a detailed description of the Defendants' businesses, assets, past performance, and projected earning, for presentation to potential buyers; (5) communicated with potential buyers and forwarded the Descriptive Memorandum to them; (6) served as an intermediary for, and representative of, the Defendants; (7) engaged in sales negotiations with potential buyers; (8) answered questions posed by potential buyers about the Defendants and their businesses; (9) prepared, revised, and reviewed confidentiality agreements and letters of intent to purchase from potential buyers; (10) assisted the Defendants with due diligence related to potential transactions; and (11) finalized certain documentation related to transactions.

These services, which the Plaintiff maintains were performed in Connecticut, are sufficient to make a *prima facie* showing that the Agreements were performed in Connecticut. It does not matter whether performance of the Agreements was done by the Plaintiff or the Defendants. As courts in this District have held for almost thirty years, the relevant contractual performance, for the purposes of applying Connecticut's long-arm statute, need not be that of the party over whom jurisdiction is sought. *See Bowman v. Grolsche Bierbrouwerij B.V.*, 474 F.Supp. 725, 731–32 (D.Conn.1979) (holding that because Connecticut's long-arm statute "does not expressly require contemplated performance in this state by the party over whom jurisdiction is sought ...., where the contract in question clearly contemplated and required performance in this state by [the] plaintiff ..., [the long-arm statute] subjects [the] defendant to suit in this state."); *see also Chem. Trading, Inc. v. Manufacture de Produits Chimiques de Tournan*, 870 F.Supp. 21, 23–24 (D.Conn.1994); *Aurand v. Contemporary Mktg., Inc.*, No. Civ.A.3:05CV1053 (JCH), 2005 WL 3499995, at *3–4 (D.Conn. Dec.20, 2005); *Gen. Star Indem. Co. v. Anheuser–Busch Cos., Inc.*, No. 3:97–CV–2542 (EBB), 1998 WL 774234, at *3–4 (D.Conn. Aug.24, 1998). There are numerous decisions from the Connecticut Superior Court that have also so held. *See, e.g., Elstein & Elstein, P.C. v. TrafficCast, Inc.*, No. CV054011761S, 2006 WL 1610531, at *2–3 (Conn.Super.Ct. May 24, 2006); *Advanced Claims Serv. v. Franco Enters.*, No. CV000374548S, 2000 WL 1683416, at *3–4 (Conn.Super.Ct. Oct.13, 2000); *IDV N. Am., Inc. v. Saronno*, No. CV 99058059, 1999 WL 773961, at *4–5 (Conn.Super.Ct. Sept.09, 1999). Therefore, the court finds that Connecticut's long-arm statute, Conn. Gen.Stat. § 33–929(f)(1), provides a sufficient basis for the exercise of jurisdiction over the Defendant.

tion." *Indymac Mortgage Holdings, Inc.*, 167 F.Supp.2d at 232.

## 2. Due Process

■ The second step of the court's analysis is to determine whether this court's exercise of jurisdiction over the Defendants offends due process. The standard set forth by the Supreme Court is a familiar one: "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The Second Circuit has recently described how the court should analyze jurisdictional due process issues:

> A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the 'quality and nature,' *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 ... (1985), of the defendant's contacts with the forum state under a totality of the circumstances test, *id.* at 485–86, 105 S.Ct. 2174.... The crucial question is whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' *id.* at 475, 105 S.Ct. 2174 ... (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 ... (1958)) (internal quo-

tation marks omitted), 'such that [the defendant] should reasonably anticipate being haled into court there,' *id.* at 474, 105 S.Ct. 2174 ... (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 ... (1980)) (internal quotation marks omitted).

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 242–43 (2d Cir.2007).

The court is satisfied that due process is not offended by this court's exercise of jurisdiction. With regard to "minimum contacts," the Defendants entered into the Agreements with the Plaintiff, a Connecticut company, for the purpose of selling a portion of the Defendants' businesses. Various type of communications were made to and from Connecticut. Under the agreements, the Plaintiff, which the Defendants presumably knew is a Connecticut company, was obligated to perform certain functions. It was reasonable to expect that the Plaintiff would perform its obligations in Connecticut. In addition, the Agreements specifically confer jurisdiction upon Connecticut and invoke the benefits and protections of Connecticut law. Therefore, based on these contacts, the court finds that the Defendants could reasonably have been expected to be haled into a Connecticut court, despite the fact that they may have never physically been to Connecticut. *See Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174 ("Jurisdiction ... may not be avoided merely because the defendant did not *physically* enter the forum State.") (emphasis in original).[4]

---

**4.** This action arises specifically out of the Defendant's contacts with Connecticut. These contacts are, at least, sufficient to subject the Defendants to "specific jurisdiction," wherein "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Metro. Life Ins. Co.,* 84 F.3d at 567–68 (internal quotation marks omitted). Be-

cause the "minimum contacts" standard is satisfied by "specific jurisdiction," the court need not discuss whether the Defendants are subject to "general jurisdiction," which "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.* at 568.

The Defendants also have not convinced the court that "traditional notions of fair play and substantial justice" would be violated through this court's exercise of jurisdiction. Because "minimum contacts" have been established here, the Defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. 2174. In determining this issue, the court "may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* (quoting *World–Wide Volkswagen Corp.,* 444 U.S. at 292, 100 S.Ct. 559).

With regard to the convenience of the parties, the court notes that the Plaintiff's choice of forum is "entitled to substantial consideration." *In re Warrick,* 70 F.3d 736, 741 (2d Cir.1995) (internal quotation marks omitted). "In fact, 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Pollux Holding Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 71 (2d Cir.2003) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The Defendants assert that, if this case remains in this District, they will face "a formidable inconvenience, both in terms of financial burden and in defending the lawsuit," and they will incur "[t]remendous expenses ... in being forced to travel from Alabama to Connecticut to defend this action." (Dkt.# 26, p. 13.)

The court does not believe that these general assertions are sufficient to counter the "substantial consideration" that the court must give the Plaintiff's choice of forum. The Defendants do not demonstrate how great their "financial burden" will be, let alone demonstrate that their financial burden will be so much greater than the Plaintiff's that it would be unreasonable for this court to exercise its jurisdiction. When a party asserts that is would suffer such an unreasonable financial burden by burdensome, it must offer evidence supporting such an assertion. *See Excelsior Designs, Inc. v. Sheres,* 291 F.Supp.2d 181, 187 (E.D.N.Y.2003); *Argent Funds Group, LLC v. Schutt,* 3:05CV01456 (SRU), 2006 WL 2349464, at *4 (D.Conn. June 27, 2006). The Defendants provide no such evidence here.

The Defendants do raise a serious issue regarding the convenience of potential non-resident witnesses, which "is an important factor ... due to concern over the parties' ability to compel witnesses to testify." *Argent Funds Group, LLC,* 2006 WL 2349464, at *5 (citing *Ford Motor Co. v. Ryan,* 182 F.2d 329, 331 (1950)). The parties cannot require a witness to testify by subpoena if the witness would have to travel more than 100 miles from the place where he "resides, is employed or regularly transacts business in person." Fed. R.Civ.P. 45(c)(3)(A)(ii). "Nonetheless, non-party witnesses who cannot be compelled to testify by subpoena can appear at trial through a videotaped deposition." *Argent Funds Group, LLC,* 2006 WL 2349464, at *5. Moreover, "[i]n assessing the convenience of witnesses, courts examine the residence of witnesses, ... and the 'materiality, nature, and quality of each witness.'" *Id.* (citing *Golconda Min. Corp. v. Herlands,* 365 F.2d 856, 857 (2d Cir. 1966); quoting *Royal & Sunalliance v. British Airways,* 167 F.Supp.2d 573, 577 (S.D.N.Y.2001)). The parties "must specify who the key witnesses are and what their testimony will generally cover, and support his statements with affidavits." *Id.*

Here, however, the Defendants have only generally stated that the potential non-resident witnesses in this case would include representatives of The Lamar Company and Olympus Media. The Defendants do not specify who these representatives are or where they live. In fact, the Defendants have not specified where either The Lamar Company or Olympus Media is located.[5] Without any such specific showing of an unreasonable inconvenience to the Defendants or their witnesses, the court shall not "merely shift the burden of inconvenience from one party to the other." *Excelsior Designs, Inc.*, 291 F.Supp.2d at 187 (internal quotation marks omitted). Therefore, the court finds that this court's exercise of jurisdiction is not unreasonably burdensome upon the Defendants.

Next, the court must consider Connecticut's interest in adjudicating this dispute. The Defendants argue that because this case involves assets and property located in Alabama, Alabama's interest in adjudicating this dispute is greater than Connecticut's. The court finds this argument unconvincing. This is, essentially, a breach of contract case involving two contracts that, by their own terms: (1) specifically conferred jurisdiction over the contracts to Connecticut; and (2) are to be governed by Connecticut law. Because this case "concerns issues of Connecticut ... law, Connecticut has an interest in adjudicating the dispute." *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161, 165 (D.Conn.1996). In addition, as the Plaintiff points out, Connecticut has a "manifest interest" in providing its residents with a convenient forum for relief from injuries caused by out-of-state actors. *See Burger King Corp.*, 471 U.S. at 473, 105 S.Ct. 2174; *Milne v. Catuogno Court*

*Reporting Servs., Inc.*, 239 F.Supp.2d 195, 206 (D.Conn.2002). Therefore, the court believes that this factor weighs in the plaintiff's favor, and the Defendants have not presented a "compelling case" showing otherwise.

The court then turns to the interests of the Plaintiff in obtaining convenience and effective relief. Litigating this case in Connecticut is obviously the most convenient option for the Plaintiff. "The plaintiff's choice of forum is the best indicator of his own convenience." *Milne*, 239 F.Supp.2d at 206 (internal quotation marks omitted). This factor weighs in favor of the Plaintiff.

The court must then look to the interstate judicial system's interest in obtaining the most efficient resolution of this action. "In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." *Metro. Life Ins. Co.*, 84 F.3d at 574. Again, the court does not believe that the Defendants have made a "compelling case" with regard to this factor. Because the Defendants are in Alabama, it is likely that they will have witnesses and evidence located in Alabama. But as the court pointed out above, the Defendants do not provide specifics in this regard, or with regard to any non-party witnesses. Moreover, the Plaintiff has indicated that its evidence and party-witnesses are located in Connecticut, and that the non-party witness from whom it may seek testimony, although not located in Connecticut, are also not located in Alabama. (*See* dkt. # 32 ¶ 12.) The Plaintiff specifies one potential witness, Mike Bukowski of Pierce Hardy Limited Partnership in Pennsylvania, and indicates that it may seek the testimony of representatives from The Lamar Company in Louisiana

---

**5.** Rather, it is the Plaintiff, not the Defendants, which has indicated that The Lamar Company is located in Louisiana and Olym-

pus Media is located in Florida. (*See* dkt. # 32 ¶ 12.)

and Olympus Media in Florida. (*See id.*) The Defendants themselves have indicated that they may seek testimony from representatives from The Lamar Company and from Olympus Media, but neither of these organizations appears to be located in Alabama. Therefore, the court finds that the Defendants have not made a "compelling case" with regard to this factor.

Finally, the court must examine the shared interest of the several States in furthering fundamental substantive social policies. The Defendants argue that Connecticut's interest is not as great as Alabama's, which is merely a re-argument of the second factor the court considered above. Although the Defendants, the assets, and the property in question may be located in Alabama, the Plaintiff is located in Connecticut, the Agreements provide for Connecticut jurisdiction and are governed by Connecticut law, and the non-party witness appear to be located in various states. Therefore, the court finds that it has personal jurisdiction over the Defendants. Consequently, the Defendants' motion to dismiss for lack of personal jurisdiction **(dkt.# 25)** is **DENIED.**

### C. VENUE

#### 1. 28 U.S.C. § 1406(a)

█ The Defendants also allege that dismissal, or alternatively a transfer to another district, is warranted because of improper venue. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). For 28 U.S.C. § 1406(a) to apply, however, the court must determine whether venue is improper in the District of Connecticut. When, as here, a court's subject matter jurisdiction over a case is founded solely upon the diversity of the parties, 28 U.S.C.

§ 1391(a) determines venue. Section 1391(a) reads as follows:

A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The Defendants first argue that 28 U.S.C. § 1391(a)(1) does not apply because they are residents of the State of Alabama. The Defendants, however, are companies, not individual people. "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). "Essentially section 1391(c) equates jurisdiction with venue for corporate defendants." *Divicino v. Polaris Indus.,* 129 F.Supp.2d 425, 435 (D.Conn.2001) (internal quotation marks omitted). "[I]f the Court concludes that both defendants are subject to jurisdiction in this district, then they both 'reside' here (within the meaning of section 1391(c)) and, therefore, venue is proper here." *Id.* (collecting cases). Furthermore, "[t]he fact that venue may be proper in another district does not make venue in the District of Connecticut improper because venue may be properly laid in more than one district." *Id.* at 436.

The court has already concluded that the Defendants are subject to jurisdiction within the District of Connecticut. As a

result, under 28 U.S.C. § 1391(c), they are deemed to "reside" in Connecticut, and venue is proper within the District of Connecticut.[6] As venue is proper within this District, 28 U.S.C. § 1406(a), which provides for a dismissal or transfer in the case of improper venue, is inapplicable to this case. Consequently, insofar as it relies on 28 U.S.C. § 1406(a), the Defendants' motion to dismiss, or alternatively, motion to transfer for improper venue (dkt.# 25) is **DENIED.**

### 2. 28 U.S.C. § 1404(a)

■ The Defendants also move to transfer venue based upon 28 U.S.C. § 1404(a), which reads as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) differs from § 1406(a) in that venue does not need to be improper for § 1404(a) to apply. That is, where, as here, a court finds that the requirements of personal jurisdiction and venue are satisfied, the court may nevertheless transfer a case "for the convenience of the parties and witnesses" and "in the interest of justice."

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir.2006). The court should first look to see "if there is an alternative forum that has jurisdiction to hear the case." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir.1996). If such an alternate forum exists, the court, weighing "a variety of private and public considerations," should then determine "the forum that will be most convenient and will best serve the ends of justice." *Id.*

As the Second Circuit has pointed out,

Some of the factors a district court is to consider are, *inter alia:* "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties."

*D.H. Blair & Co., Inc.*, 462 F.3d at 106–07 (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y.2002)). The court can also consider "a forum's familiarity with the governing law; ... trial efficiency; and ... the interest of justice." *Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F.Supp.2d 1053, 1064 (D.Conn. 2004). "The moving party ... has the 'burden of making out a strong case for transfer.'" *Id.* at 1064 n. 10 (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir.1989)).

The Plaintiff does not dispute that Alabama would qualify as an alternative forum for this case, as the Defendants admit that they are subject to personal jurisdiction there. The court then must consider the above-mentioned factors mentioned by the Defendants in order to determine whether a transfer is appropriate. Many of these factors mentioned by the Defendants are similar to the "traditional notions of fair play and substantial justice" factors the court analyzed in its discussion of due process. *See supra* Part II.B.2.

---

**6.** Because the court has found that venue is proper under 28 U.S.C. § 1391(a)(1), the court need not analyze the Defendants second and third arguments, which discuss § 1391(a)(2) and § 1391(a)(3).

The Defendants first argue that the convenience of both the party and non-party witnesses weighs in their favor. This argument fails here as it did with the Defendants' due process claims. With regard to party witnesses, the Defendants and their representatives are, presumably, in Alabama, and the Plaintiff and its representatives are, presumably, in Connecticut. One side or the other will be inconvenienced no matter where this case is heard. Again, the court shall not "merely shift the burden of inconvenience from one party to the other," *Excelsior Designs, Inc.*, 291 F.Supp.2d at 187 (internal quotation marks omitted), especially considering that the Plaintiff's choice of forum is "entitled to substantial consideration," *In re Warrick*, 70 F.3d at 741 (internal quotation marks omitted).

In addition, the Defendants have not met their burden with regard to demonstrating the inconvenience non-party witnesses will suffer if this case is not transferred. In this analysis, the convenience of the Defendants is not an issue. According to the Defendants, "any necessary non-party witnesses ... reside outside of the State of Connecticut." This statement, however, provides no specifics as to who these witnesses are. Moreover, the fact that such witnesses reside outside of Connecticut does not necessarily mean that Alabama is more convenient.

The Defendants go on to claim that "the vast majority" of the non-party witnesses reside in Alabama. Again, however, the Defendant provide no specifics, in the form of affidavits or evidence, demonstrating that this is true. The Defendants have mentioned two specific companies, The Lamar Company and Olympus Media, that may provide witness testimony. From what the court can tell, though, neither of these companies is located in Alabama. Moreover, the Plaintiff has indicated that it may seek the testimony of a witness who is located in Pennsylvania. The court fails to see how it would be more convenient for the nonparty witnesses if this case were heard in Alabama, considering that the Defendants have not identified any non-party witnesses who reside in Alabama.

The Defendants' argument with regard to the court's subpoena power fails for the same reason. Despite the Defendants' assertions that "the vast majority" of the non-party witnesses reside in Alabama, none of the non-party witnesses actually specified appears to be from either Alabama or Connecticut. Absent a showing that the non-party witnesses "resides, is employed or regularly transacts business in person" within 100 miles of the Defendants' preferred venue, *see* Fed.R.Civ.P. 45(c)(3)(A)(ii), the court shall not transfer this case on that account. Furthermore, the Defendants have submitted no affidavits or evidence demonstrating that these witnesses would be unwilling to voluntarily travel to Connecticut, or would be unable to do so without extreme hardship. *See USES Mfg., Inc. v. Rocky Mountain Inst. Research*, 94 F.Supp.2d 218, 224 (D.Conn. 2000). Accordingly, the Defendants have not met their burden of demonstrating that the convenience of the parties and non-party witnesses warrants transfer.

The Defendants next claim that the Plaintiff "cannot point to a single event that occurred within the State of Connecticut that relates to this action." (Dkt.# 26, p. 20.) The court disagrees. The Plaintiff has pointed to events that occurred within the State of Connecticut, i.e., their conduct in the performance of the Agreements. Additionally, the Defendants simple assertion that the relevant documents related to this dispute are located in Alabama is unconvincing "absent any showing of what would be required to transport [them] to Connecticut." *USES Mfg., Inc.*, 94 F.Supp.2d 218, 224 (D.Conn.2000); *see*

*Kiss My Face Corp. v. Bunting,* No. 02CIV2645 (RCC), 2003 WL 22244587, at *2 (S.D.N.Y. Sept.30, 2003) ("[G]iven Defendant's failure to provide the Court with the nature and volume of the documents she plans to use in support of her case, or the difficulty in transporting such documents, this factor weighs against transfer.") In the court's view, the Defendants have not met their burden in demonstrating that a transfer is warranted. Consequently, the Defendants' 28 U.S.C. § 1404(a) motion to transfer venue (**dkt.# 28**) is **DENIED.**

### III. CONCLUSION

For foregoing reasons, the Defendants' motions to dismiss for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer venue (**dkt. # s 25 & 28**) are **DENIED.**

**SO ORDERED.**