**PITNEY BOWES, INC.**

v.

**NATIONAL PRESORT, INC.**

No. 3:98CV2129 (WWE).

United States District Court,
D. Connecticut.

Dec. 1, 1998.

———

John M. Callagy, James E. Nealon, Kelley Drye & Warren, Stamford, CT, for Pitney Bowes, Inc.

Stewart I. Edelstein, Cohen & Wolf, P.C., Bridgeport, CT, for National Presort, Inc.

### RULING ON DEFENDANT'S MOTION TO TRANSFER

EGINTON, Senior District Judge.

### I. BACKGROUND

Defendant National Presort, Inc. ("NPI") has moved to transfer this civil action to the Northern District of Texas. For the reasons set forth herein, the motion will be denied.

Pitney Bowes, Inc. ("PB") is a Delaware corporation with its principal place of business located in Stamford, CT. NPI, an Oklahoma corporation, has its principal place of business in Dallas, TX. Jurisdiction in this Court is based upon diversity of citizenship.

NPI manufactures and markets multi-line optical character readers ("MLOCR"). PB is a customer for this product. Its Production Mail and Softwares System Division sells and services MLOCR which, among other functions, pre-sorts mail by geographic destination Zip Code. The agreements at issue in this litigation document a business arrangement which commenced in 1991. Agreements in controversy consist of an FP Series contract dated March 12, 1991, an MPS agreement dated August 2, 1993, a software maintenance agreement dated December 1, 1994, a PB purchase order to NPI dated October 28, 1996 and a settlement agreement dated October 13, 1997. The Court approaches its ruling on defendant's Motion to Transfer with the view that there are two aspects of these agreements that will involve trial evidence. The parties will contest the circumstances surrounding the negotiation and execution of the various agreements, and

will also contest the adequacy of performance under the various agreements. This distinction is significant to the resolution of the transfer issue now before the Court.

## II. APPLICABLE LAW

■ In considering a Motion to Transfer, a court must give deference to a strong presumption in favor of the plaintiff's choice of forum, which presumption may be overcome only by clear and convincing evidence that private and public interest factors favor trial in the alternative form. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). When a court weighs all of the relevant factors (enumerated below) "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1946). Accord: *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir.1996) (quoting both Supreme Court opinions); *SEC v. Electronics Warehouse, Inc.*, 689 F.Supp. 53, 74 (D.Conn.1988) (Plaintiff's choice of forum will not be disturbed unless the movant shows that the balance of convenience and interests of justice weigh heavily in favor of transfer); *Clisham Management v. American Steel Bldg. Co.*, 792 F.Supp. 150, 157 (D.Conn. 1992) (Plaintiff's choice of forum is entitled to considerable weight).

■ In applying the balancing test, the Court must be cognizant of the aforesaid presumption favoring the plaintiff's choice of forum. The relevant factors which the Court will now review are (1) locus of operative facts; (2) access to evidence; (3) convenience of *non-party* witnesses; (4) availability of compulsory process to compel witness testimony; (5) convenience of the parties; (6) familiarity of the forum with governing law; (7) trial efficiency; (8) the relative financial means of the parties, and a catchall factor (9), interests of justice. We consider these factors in the relative order of importance.

## III. BALANCING OF THE RELEVANT FACTORS

1. The Locus of Operative Facts

After carefully reviewing the arguments made in the briefs and more importantly, the statements made in the affidavits, the Court is unable to conclude that the locus of the operative facts lies in Texas. It appears to the Court that a greater portion of the operative facts occurred in Texas but that a significant portion of the events that will be contested at trial occurred in Connecticut. Accordingly, this factor carries little or no weight in deciding the motion, since the Court finds that there are significant contacts with both Connecticut and Texas. *National Utility Service, Inc. v. Queens Group, Inc.*, 857 F.Supp. 237, 241 (E.D.N.Y.1994).

2. Access to Evidence

The Court must consider the relative ease of access to trial evidence, including location of relevant documents. Concepts of relevance have a way of metamorphosing during the course of discovery, but at this stage it appears from the briefs and affidavits that a good portion of the relevant documents will be found in Connecticut. In the modern setting of increasing judicial willingness to accept FAXed documents and E–Mail transmissions, presentation of documentary evidence at trial is not the burden that it once posed. Nevertheless, the Court believes that this factor, marginal at best in this instance, slightly favors trial in Connecticut.

3. Convenience of Non-party Witnesses

It is apparent that there will be many witnesses offered at trial and the Court is aware that these witnesses will have to be deposed before offering trial testimony. Significantly, most of the witnesses appear to be employed by a party. The affidavit of NPI's President Henry Daboub lists 16 witnesses, of whom five are former employees of NPI who live in the Dallas area. From description of testimony set forth in the Daboub affidavit, it appears that much of the testimony of the former employees is cumulative of the testimony to be offered by President Daboub and others who are still in the employ of NPI. To the extent that non-cumulative testimony is proffered by these individuals, the Court in Connecticut will entertain video taped depositions.

4. Compulsory Process to Compel Witness Testimony

The comments of the Court with respect to Point 3 are relevant to the consideration of compulsory process for uncooperative witnesses. As plaintiff points out in its Reply Memorandum of November 17th at page 8, the Court is hardly in a position at this point to judge the extent of any inconvenience for non-party witnesses, whether they would resist giving testimony and whether they would be subject to compulsory process. The Court does not know whether any or all of these five witnesses would be willing to come to Connecticut to testify, whether they can offer significant relevant testimony, and whether they are within the subpoena power of the Northern District of Texas. Absent detailed information as to these aspects, the Court finds that this factor does not remotely overcome the presumption in favor of plaintiff's choice of forum.

5. Convenience of the Parties

As many courts have noted, the Court should not use an Order to Transfer to do nothing more than shift the burden of inconvenience from one party to the other. It appears to the Court that no matter where the case were to be sited, inconvenience is unavoidable to one party or the other, given the number of witnesses from Connecticut, the number of witnesses from Texas, and the logistical problems involved, as they often are, in diversity jurisdiction involving two corporate entities. *Van Ommeren Bulk Shipping B.V. v. Tagship, Inc.*, 821 F.Supp. 848, 850 (D.Conn.1993) (Courts should not generally order a transfer which would merely shift the burden of inconvenience from one party to the other).

6. Familiarity of the Forum with Governing Law

For the most part, the agreements between the parties are silent as to governing law, although PB points out that the purchase orders are all governed by the law of this forum. In any event, federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State, and familiarity with such foreign law presents no technological problems in the modern age of WESTLAW and LEXIS. Accordingly, familiarity of the forum should present no problem.

7. Trial Efficiency

The District of Connecticut currently has seven of its eight authorized active judges on duty, and the eighth is expected to join the Connecticut federal bench early in the new year. In addition, there are five senior judges in the district. It appears to this court that any difference between the Northern District of Texas and the District of Connecticut in trial efficiency is insignificant. Furthermore, this jurist is in senior status and can without difficulty schedule the case for trial as soon as counsel indicate trial readiness.

8. Relative Financial Means of the Parties

Pitney Bowes is a major corporate entity in the constellation of United States corporations. However, as PB has pointed out, NPI is no slouch, enjoying international business operations. Given the observations made earlier in this ruling as to the effect of technology on the ease and cost of trial conduct, the relative financial status of the corporations appears not to be a significant factor.

9. Interests of Justice

There do not appear to be any factors that have not been considered in this ruling.

### CONCLUSION

The Court finds, and rules, that the significant presumption accorded the choice of forum by the plaintiff in this matter is not overcome by the combination of factors reviewed and balanced by the Court in reaching its conclusion. Accordingly, the defendant's Motion to Transfer this matter to the Northern District of Texas is DENIED.

So ORDERED.