**EXCELSIOR DESIGNS, INC., Plaintiff,**

v.

**Gregory SHERES, individually and sometimes doing business as Sheres Studio, Defendant.**

No. 03 CV 2141(ADS)(ETB).

United States District Court, E.D. New York.

Nov. 15, 2003.

Moritt, Hock, Hamroff & Horowitz, Garden City, NY (Alan S. Hock, of Counsel), for Plaintiff.

Greenberg Traurig, LLP, Phoenix, AZ (Steven M. Weinberg, of Counsel), for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This diversity case involves allegations by Excelsior Designs, Inc. ("Excelsior" or the "plaintiff") against Gregory Sheres ("Sheres" or the "defendant") for defamation, tortious interference with contractual relations, and unfair competition. Presently before the Court is the defendant's motion to transfer venue to the District of Arizona pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

### A. The Parties and the Allegations in the Complaint

Excelsior is a nationwide distributor of upscale contemporary and transitional furniture collections manufactured in and imported from Italy. Excelsior is located in Amityville, New York, and does not maintain any offices outside the state. The plaintiff has a total of twelve employees: a president, a vice-president of operations, a director of design, a vice-president of sales, five clerical staff, a warehouse supervisor, and two warehouse workers. Excelsior also uses the services of twelve outside sales representatives, none of whom are located in Arizona. Six of these representatives are located on the East Coast in New Jersey, Maryland, North Carolina, Florida, Michigan, and Illinois; four are located on the West Coast in Washington, Colorado, and California; and two are in Missouri and Minnesota. None of the plaintiff's employees travel to the State of Arizona on business.

Sheres, a resident of Arizona, is the owner and sole shareholder of Sheres Studio, Inc., which designs distinctive furniture. Sheres maintains his principal place of business in Scottsdale, Arizona and does not have any offices outside that state. He employs two warehouse workers and two bookkeepers/customer service representatives.

By letter dated April 28, 2003 to Excelsior, Sheres alleged that the plaintiff's Cristallo Collection violated and infringed upon his intellectual property rights in his Marseille/Paris Collection. Among other things, this letter demanded that Excelsior immediately stop the manufacturing, distributing, marketing, and sale of its Cristallo Collection. Upon receiving this letter, the plaintiff contacted its attorney to prepare a response. Prior to responding to Sheres' letter, one of the plaintiff's retail customers in New York, Nicoletti Italia, informed Excelsior that it had received a letter, dated April 28, 2003 ("April 28th Letter"), from the defendant. Among other things, the April 28th Letter stated:

It has come to our attention that one of our competitors, Excelsior, has violated our intellectual property rights by knocking off our distinctive and popular Marseilles Paris dining collection

. . . . .

To protect ourselves from this violation we intend to initiate legal action against Excelsior if it refuses to cease selling its infringing knock-off. If necessary, we also will name retailers who do not cooperate with us and continue selling the infringing knock off.

. . . . .

If you do not carry this infringing collection in your store(s), please avoid ordering it from Excelsior and disregard this letter. If you know of retailers who carry it in their stores, please tell us so that we may contact them.

. . . . .

If you do carry this collection in your store, we are asking for your cooperation in not continuing to sell the infringing collection.

. . . . .

As part of this relationship we hope that now that you have been made aware of our intellectual property rights you will not continue selling an infringement on them. We therefore are asking that you immediately stop selling the infringing collection and return the samples to Excelsior.

. . . . .

We also request that you provide us with the names of any retailers that you know are carrying this collection.

. . . . .

We . . . hope that you agree that this kid of pirating of our distinctive and unique designs should not be allowed.

The plaintiff asserts that it learned that the April 28th Letter was being sent to numerous Excelsior's customers and that it ascertained that at least twelve of its retail customers received this letter from Sheres. On May 2, 2003, the plaintiff commenced this action for defamation, tortious interference with contractual relations, and unfair competition. On June 9, 2003, the defendant filed the present motion to change venue to the District of Arizona. To date, Sheres has not filed an answer.

### B. The Motion

The defendant's motion to transfer venue is supported by Sheres' affidavit in which he asserts that he is the principal furniture designer for his business. Sheres states that he personally manages the day-to-day operations of his business and that litigating in New York would disrupt his business. The defendant further contends than 1 percent of his annual sales is generated from the State of New York, and a majority of those sales are made to an online furniture dealer located in Buffalo, New York. Most of Sheres' customers are located on the West Coast, and 75 percent of his business is conducted west of the Mississippi River. Also, more than 30 percent of the defendant's business, and two of his largest customers are located in Arizona. In addition, at least 25 percent of his business and customers are located in California. In contrast, only 25 percent of his business is conducted on the East Coast, with most of that business located in Florida and Georgia. Neither Sheres nor his employees travel to the State of New York on business.

Sheres concedes that, upon learning of Excelsior's alleged infringement of his designs, he sent letters to dealers around the

country advising them that he considered Excelsior's Cristallo Collection to be an infringement of his Marseilles/Paris Collection. Of the eighty-five letters sent, approximately ten went to addresses in the State of New York. Sheres also states that one letter went to a customer in Arizona and fifteen to customers in California.

According to the defendant, his four largest customers are located on the West Coast: Designer's Choice (Arizona), Cantoni (California and Texas), Ralph Hayes Contemporary (California and Washington), and Robb and Stucky (Arizona, Dallas, and Florida). Sheres states that he anticipates that these customers may be called as witnesses in this action to testify concerning the similarity of and confusion with the plaintiff's Cristallo Collection. Furthermore, the plaintiff expects that certain other customers, including Floridian Furniture (Florida) and Rosenthal Furniture (Minnesota) may be called to proffer similar testimony. Sheres also states that several potential witnesses, each of whom are customers of both the defendant and Excelsior, are located in California. He asserts that none of his witnesses are located in the State of New York. The plaintiff also contends that nearly all the information involving his Marsailles/Paris Collection is located in Arizona.

In opposing this motion, the plaintiff provides an affidavit by Steven Kayne ("Kayne"), who is the president, sole principal and shareholder of Excelsior. Kayne asserts that he is responsible for the overall day-to-day operations and runs the majority of Excelsior's business from the New York office. Kayne is principally responsible for the design of Excelsior's distinctive furniture, including the Cristallo Collection. According to Kayne, he is the person most knowledgeable and competent to testify on Excelsior's behalf regarding the Cristallo Collection, its design and distinctiveness. He further states that the only other persons having relevant knowledge regarding the design and manufacture of Excelsior's furniture, including its Cristallo Collection, is Excelsior's manufacturer in Italy. As such, any relevant documents or sources of information relating to the design and manufacture of the Cristallo Collection are located in New York or Italy. No documents or course of information relating to the design and manufacture of Excelsior's Cristallo Collection are located in Arizona or on the West Coast.

Furthermore, Kayne states that, although Excelsior distributes its furniture collections on a nationwide basis with respect to the Cristallo Collection, almost 75 percent of Excelsior's annual sales of that collection have been made to customers on the East Coast, while only approximately 8 percent of sales have been made to customers on the West Coast. Kayne also asserts that approximately 7.5 percent of Excelsior's annual sales of the Cristallo Collection have been made to customers in the State of New York, while only approximately 1.5 percent of its annual sales of the Cristallo Collection have been made to customers in Arizona. Excelsior therefore claims that the majority of any potential witnesses who are most familiar with the facts in this case, and may be called to testify by Excelsior regarding its Cristallo Collection, its distinctiveness, its sales, and a lack of any customer confusion between the Cristallo Collection and Sheres' collection, are located in New York or on the East Coast.

In addition, the plaintiff claims that at least twelve of its own retail customers have received the letter, all of which customers either sell, have sold or are otherwise familiar with the Cristallo Collection, including, Designs for Living by Gil (New York), Nicoletti Italia, Inc. (New York),

Decorators Signature, Inc. (Florida), Bilt-well (Pennsylvania), Furniture Land South, Inc. (North Carolina), Sherwood Studios (Michigan), Elan Furniture (Nebraska), Italy 2000 (California), Lawrance Furniture (California), Foster's Furniture (Washington), Parnian Furniture (Arizona), and Traditions (Colorado). The plaintiff states that each of these customers are potential witnesses that Excelsior may call to testify in this action regarding their firsthand knowledge of the April 28th Letter and their familiarity and knowledge regarding Excelsior and the distinctiveness and design of its Cristallo Collection.

## II. DISCUSSION

■ Pursuant to 28 U.S.C. § 1404(a), a district court may transfer venue, in the interest of justice, "for the convenience of parties and witnesses." The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. *See Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.) *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); *Hernandez v. Blackbird Holdings, Inc.*, No. 01 Civ. 4561, 2002 WL 265130, *2, 2002 U.S. Dist. LEXIS 2999, at *4 (S.D.N.Y. Feb. 25, 2002). Furthermore, the movant must support its motion with a detailed factual affidavit. *See Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587, *1, 2003 U.S. Dist. LEXIS 17096, at *4 (S.D.N.Y. Sept. 30, 2003); *Student Advantage, Inc. v. Int'l Student Exchange Cards, Inc.*, No. 00 Civ.1971, 2000 WL 1290585, *6, 2000 U.S. Dist. LEXIS 13138, *17 (S.D.N.Y. Sept. 12, 2000); *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F.Supp. 62, 66 (S.D.N.Y.1993).

■ In considering whether to grant a venue transfer, courts engage in a two-part test: (1) whether the action "might have been brought" in the proposed trans-feree forum; and (2) whether the transfer promotes convenience and justice. *Schertenleib v. Traum*, 589 F.2d 1156, 1161 (2d Cir.1978); *Invivo Research, Inc. v. Magnetic · Resonance Equipment*, 119 F.Supp.2d 433, 436 (S.D.N.Y.2000). Because it is undisputed that this action could have been brought in Arizona, the primary inquiry before the Court is whether convenience and justice support the transfer.

■ In making this determination, courts are guided by the following factors: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *See Kroll v. Lieberman*, 244 F.Supp.2d 100, 102 (E.D.N.Y.2003). It is well-established that district courts have broad discretion in balancing these factors. *See Gateway Companies, Inc. v. Vitech America, Inc.*, No. 01–9125, 33 Fed.Appx. 578, 579, 2002 U.S.App. LEXIS 10269, at *2 (2d Cir. Apr. 23, 2002); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

### A. The Convenience of the Witnesses

■ The convenience of the witnesses is probably the single most important factor in the transfer analysis. *See Lewis v. C.R.I., Inc.*, No. 03 Civ. 651, 2003 WL 1900859, *3, 2003 U.S. Dist. LEXIS 6362, at *10 (S.D.N.Y. Apr. 15, 2003); *Intria Corp. v. Intira Corp.*, No. 00 Civ. 7198, 2000 WL 1745043, *2, 2000 U.S. Dist. LEXIS 17039, at *8 (S.D.N.Y. Nov. 27, 2000). Because of the importance of this

factor, the party seeking transfer "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Royal & Sunalliance v. British Airways,* 167 F.Supp.2d 573, 577 (S.D.N.Y.2001). (internal quotations and citation omitted).

Here, Sheres claims that he anticipates his four largest customers, Designer's Choice, Cantoni, Ralph Hayes Contemporary, and Robb and Stucky, may be called as witnesses in this action to testify concerning the similarity of and confusion with the plaintiff's Cristallo Collection. With offices in more than one state, these customers are located in Arizona, Texas, California, Florida, and Washington. The defendant also asserts that other customers, Floridian Furniture and Rosenthal Furniture, in Florida and Minnesota, respectively, may be called to proffer similar testimony.

In response, the plaintiff lists twelve potential witnesses (*i.e.,* Designs for Living by Gil (New York), Nicoletti Italia, Inc. (New York), Decorators Signature, Inc. (Florida), Biltwell (Pennsylvania), Furniture Land South, Inc. (North Carolina), Sherwood Studios (Michigan), Elan Furniture (Nebraska), Italy 2000 (California), Lawrance Furniture (California), Foster's Furniture (Washington), Parnian Furniture (Arizona), and Traditions (Colorado)) that Excelsior may call to testify in this action regarding their firsthand knowledge of the April 28th Letter and their familiarity and knowledge regarding Excelsior and the distinctiveness, sale and design of its Cristallo Collection. The plaintiff further asserts that, because the defendant has not answered the complaint and no discovery has taken place, Excelsior is unaware of the identity of additional Excelsior customers that may have received the April 28th Letter. Notwithstanding this lack of discovery, the plaintiff states that its Cristallo

Collection has been distributed mostly to customers on the East Coast. Therefore, Excelsior claims that most of its anticipated witnesses regarding the collection's distinctiveness and design will be customers from New York or the East Coast.

In reviewing the witnesses who may be called to testify with respect to the April 28th Letter and their familiarity with Sheres' Marseille/Paris Collection and Excelsior's Cristallo Collection, the Court finds that the witnesses identified by the parties are located all across the country. Because these witnesses are located on both the West and East Coast, the Court finds that this factor does not clearly favor either venue.

## B. Access to Evidence and Location of Operative Facts

Courts look at the location of evidence in a 1404(a) motion when "documents are particularly bulky or difficult to transport, or proof that is it somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to brings its evidence to the moving party's proposed forum." *Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 872 F.Supp. 1247, 1251 (S.D.N.Y.1995). In this case, significant evidence is located in both the East Coast and West Coast. Similarly, the operative facts in this case are too spread out to clearly favor either venue. Accordingly, this factor is also neutral.

## C. The Convenience and Relative Means of the Parties

A court may consider the relative means of the parties "where [an economic] disparity between the parties exists." *KPMG Consulting, Inc. v. LSQ II, LLC,* No. 01 Civ. 11422, 2002 WL 1543907, *4, 2002 U.S. Dist. LEXIS 12783, at *13 (E.D.N.Y. July 12, 2002) (internal quotations and ci-

tation omitted). While Sheres runs a small business with a total of four employees, Excelsior is a nationwide distributor with a total of twelve employees. Although Excelsior has eight more employees than Sheres, indicating that Excelsior may have greater monetary assets, the financial disparity is not so obvious that this factor would weigh in favor of transfer. Moreover, "[a] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Federman Assocs. v. Paradigm Medical Indus., Inc.*, No. 96 Civ. 8545, 1997 WL 811539, *4, 1997 U.S. Dist. LEXIS 23685, at *12 (S.D.N.Y. Apr. 8, 1997). The defendant has not offered any evidence supporting his assertion that it would be a financial hardship for him to litigate in New York.

In addition, Sheres also states that the convenience of the parties weighs in favor of transfer because he personally manages the daily operations of his business and is responsible for the overall operations of the business. However, "transfer should not merely shift the burden of inconvenience from one party to the other." *MBCP Peerlogic, LLC v. Critical Path, Inc.*, No. 02 Civ. 3310, 2002 WL 31729626, *2, 2002 U.S. Dist. LEXIS 23268, at *5 (S.D.N.Y. Dec. 5, 2002). Kayne, the sole principal and shareholder of Excelsior, is a resident of and maintains his place of business in New York. Similar to Sheres, Kayne states that he is responsible for Excelsior's day-to-day operations. Litigating the case in Arizona would cause a similar hardship on Excelsior as would forcing Sheres to litigate in New York. Accordingly, again, the Court finds that this factor is neutral.

### D. The Ability to Compel the Attendance of Witnesses

In determining whether a transfer motion is appropriate, courts also examine the ability to compel the attendance of witnesses. *See Merkur v. Wyndham Int'l, Inc.*, No. 00 Civ. 5843, 2001 WL 477268, **1–2, 2001 U.S. Dist. LEXIS 4642, at *4 (E.D.N.Y. Mar. 30, 2001). Sheres contends that his primary customers located in California and the West Coast "would likely be more willing to make the short trip to Arizona rather the cross-country journey to New York." However, he fails to provide any affidavits of potential witnesses stating that such witnesses would not appear if the action remained in New York. Indeed, the defendant fails to identify any witnesses who will have to be compelled to testify at the trial in this case. Therefore, this factor does not weigh in favor of transfer.

### E. The Forum's Familiarity with the Governing Law

"[T]he 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the law of other states." *Astor Holdings, Inc. v. Roski*, No. 01 Civ.1905, 2002 WL 72936, *5, 2002 U.S. Dist. LEXIS 758, at *13 (S.D.N.Y. Jan. 15, 2002) (internal quotations and citation omitted). Regardless of whether New York law or Arizona law is applied, Sheres acknowledges that both Arizona and New York courts are competent to apply either law and concedes that this factor is neutral.

### F. The Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer. *See Ainbinder v. Potter*, 282 F.Supp.2d 180, 191 (2003); *In re Nematron Corp. Secs. Litig.*, 30 F.Supp.2d 397, 404 (S.D.N.Y.

1998); *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y.1998). The Court finds that the defendant has not demonstrated that the other factors weigh strongly in favor of transfer to the District of Arizona.

The Court notes that the defendant indicates that Excelsior "raced" to file the complaint against Sheres to secure its home forum and that the factors should be weighed in the context of his anticipated infringement claim. However, nothing in the record suggests that the plaintiff acted improperly in promptly commencing this lawsuit. Moreover, in assessing these factors, careful consideration has been given to the defendant's anticipated claim. Thus, this important factor weighs against transfer.

### G. As to Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances

In the Court's view, permitting transfer will not advance the administration of justice in this case. There are no special features in this action that would cause the interest of justice to be better served if it was in the District of Arizona or that would make the trial more or less efficient in that forum. Based upon the totality of the circumstances, the Court finds that Sheres has not satisfied his burden of demonstrating by a clear and convincing showing that convenience and justice would support transfer to the District of Arizona. As such, the Court will not vitiate the plaintiff's choice of forum. Accordingly, the defendant's motion to change venue is denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendant's motion for change of venue is **DENIED;** and it is further

**ORDERED,** that the defendant is directed to file his answer within 20 of the date of this order.

**SO ORDERED.**