Christopher WILSON, et al., Plaintiffs,

v.

DIRECTBUY, INC., et al., Defendants.

Janice Harris, et al., Plaintiffs,

v.

DirectBuy, Inc., et al., Defendants.

Brian Vance, et al., Plaintiffs,

v.

DirectBuy, Inc., et al., Defendants.

Civil Action Nos. 3:09–CV–590 (JCH), 3:11–CV–1093 (JCH), 3:11–CV–1142 (JCH).

United States District Court, D. Connecticut.

Oct. 27, 2011.

Jeffrey S. Nobel, Mark P. Kindall, Seth R. Klein, Izard Nobel P.C., West Hartford, CT, James Berman, Jeffrey R. Hellman, Zeisler & Zeisler, P.C., Bridgeport, CT, Jeffrey H. Squire, Lawrence P. Eagel, Bragar Wexler Eagel & Squire, P.C., New York, NY, for Plaintiffs.

C. Joseph Yast, DirectBuy, Inc., Merrillville, IN, Edward Wood Dunham, John Matthew Doroghazi, Joseph C. Merschman, Bradley Wilson Moore, Wiggin & Dana, New Haven, CT, for Defendants.

## RULING RE: DEFENDANTS' MOTION TO TRANSFER

## (*Wilson* Doc. No. 264, *Harris* Doc. No. 14, *Vance* Doc. No. 9)[1]

JANET C. HALL, District Judge.

## I. INTRODUCTION

Christopher Wilson, Regina Ingram, Christian Kalled, Keith Walker, Mabyn Morgan, Daniel Morgan, Raymond Bailey, Shery Bailey, and Robin Varghese (collectively "named plaintiffs") brought the top-captioned lawsuit (*"Wilson"*) against DirectBuy, Inc. ("DirectBuy"), United Consumers Club, Inc. ("UCC"), and DirectBuy Holdings, Inc. ("DB Holdings") (collectively, "defendants"). All three defendants are corporations headquartered in Merrillville, Indiana. After this court denied plaintiffs' Motion for Settlement (Doc. No. 134), the two above-captioned cases were filed in this district against the same defendants. One of the related cases was brought by Janice and Lacey Harris, and the other by Brian Vance, Tyrone Gillispie, Thomas Boettcher, Michael Nope, William Fisher, and Joel Machado.

Defendants moved to transfer each of the cases to the Northern District of Indiana. Mots. to Transfer (Doc. Nos. 264, 14, 9). For the following reasons, the Motions are **GRANTED**.

## II. STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. *Excelsior Designs v. Sheres*, 291 F.Supp.2d 181, 185 (E.D.N.Y. 2003) (citing *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.1950)); *see also United Rentals v. Pruett*, 296 F.Supp.2d 220, 228 (D.Conn.2003) (placing burden on movant despite presence of forum-selection clause); *O'Brien v. Okemo Mountain*, 17 F.Supp.2d 98, 102 (D.Conn.1998) (same). "Section 1404(a) reposes consider-

---

1. The Clerk's Office is directed to docket a copy of this Ruling in each of the three above-captioned cases.

able discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Red Bull Associates v. Best Western Int'l*, 862 F.2d 963, 967 (2d Cir.1988) (internal citation omitted).

## III. PROCEDURAL AND FACTUAL BACKGROUND

DirectBuy, Inc. ("DirectBuy") is a franchise, members-only, discount shopping club headquartered in Merrillville, Indiana. *See* Powell Aff. (*Wilson* Doc. No. 265–1) ¶ 2. DirectBuy is a wholly-owned subsidiary of United Consumers Club, Inc. ("UCC"), which is a wholly-owned subsidiary of DirectBuy Holdings, Inc. ("DB Holdings"). *Id.* ¶ 3. DirectBuy has franchise shopping centers throughout the United States. *See* Defs.' Mem. in Supp. of Mot. to Transfer (*Wilson* Doc. No. 265) ("*Wilson* Defs.' Mem. in Supp.") 6. DirectBuy purports to offer its members products at manufacturer's or supplier's prices, resulting in major savings for its members by cutting out the retail markup. *See* First Am. Compl. (Doc. No. 255) ("*Wilson* Am. Compl.") ¶ 26. The *Wilson* plaintiffs allege that DirectBuy engaged in fraud by purporting to offer its members products "at the manufacturer's or supplier's price." *Id.* ¶ 41. According to plaintiffs, DirectBuy failed to disclose "rebates, discounts, and other payments from manufacturers and suppliers," which plaintiffs claim amounted to approximately $6 million during the fiscal year ending in 2007, and a total of $45.7 million during the eight year class period. *Id.* ¶ 43.

Plaintiffs assert claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, averring that defendants acted in collusion with franchisees to engage in the alleged fraud. *Wilson* Am. Compl. ¶¶ 49–78. Plaintiffs also assert a claim of common law fraud, *id.* at ¶¶ 79–85, and a claim

under the consumer protection statutes of Arizona, Arkansas, California, Colorado, Connecticut, Florida, Idaho, Illinois, Indiana, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Texas, Utah, Virginia, Washington, and West Virginia on behalf of subclasses of plaintiffs who purchased memberships in those states. *Id.* at ¶¶ 86–92.

Shortly after the *Wilson* suit was filed in 2009, the parties jointly requested a stay of all deadlines pending settlement negotiations to be mediated by Magistrate Judge Garfinkel, *see* Joint Mot. for Referral (*Wilson* Doc. No. 14), which this court granted. *See* Order Granting Joint Mot. for Referral (*Wilson* Doc. No. 19). For nearly a year and a half, the parties engaged in settlement negotiations. While the settlement negotiations were ongoing, plaintiffs in a similar case in the Southern District of Indiana moved to centralize four actions including the instant case in the Southern District of Indiana. *See* MDL Panel Order Den. Transfer (*Wilson* Doc. No. 41). Defendants opposed centralization before the Panel, and plaintiffs in *Wilson* opposed centralization and alternatively favored transfer to the District of Connecticut. *Id.* at 1.

On March 29, 2011, *Wilson* plaintiffs moved for final approval of the settlement. *See* Mot. for Final Approval (*Wilson* Doc. No. 134). On May 10, 2011, this court held a hearing on the fairness of the proposed settlement, *see* Minute Entry (*Wilson* Doc. No. 239), and on May 16, 2011, 2011 WL 2050537, this court denied plaintiffs' Motion for Final Approval of Class Settlement on grounds of procedural and substantive fairness. *See generally* Ruling Den. Mot. for Settlement (*Wilson* Doc. No 243). Plaintiffs then filed an Amended

Complaint, deleting their claim of unjust enrichment against all defendants and adding the common law fraud and state consumer protection law claims. *See Wilson* Am. Compl. ¶¶ 79–92; *see also* Compl. ¶¶ 70–78 (*Wilson* Doc. No. 1). Defendants moved to dismiss the case and filed the present Motion to Transfer to the Northern District of Indiana. *See* Mot. to Dismiss (*Wilson* Doc. No. 262); Mot. to Transfer (*Wilson* Doc. No. 264).

Following this court's rejection of the proposed class settlement, and before DirectBuy filed its motions, two related cases were filed in this District. In Harris, Janice and Lacey Harris of Missouri bring suit on behalf of Missouri DirectBuy members against DirectBuy, UCC, and DB Holdings for violation of the Missouri Merchandising Practices Act, Mo.Rev.Stat. § 407.020 (2011). Defendants allege that an essentially identical suit is pending in Missouri state court, and that the state court case and the case in this District are both versions of a suit that has been pending in state and federal courts in Missouri since 2008. *See* Mot. to Transfer 2–3 (*Harris* Doc. No. 14). In Vance, plaintiffs bring claims on behalf of DirectBuy members in Ohio, Indiana, Texas, Utah, Oklahoma, and Massachusetts for violation of those states' consumer protection statutes. *See* Compl. (*Vance* Doc. No. 1) ("*Vance Compl.*"). Plaintiffs voluntarily dismissed a similar case in the Southern District of Indiana the day before filing in this District. *See* Indiana Docket Sheet (*Vance* Doc. No. 9–1).

Plaintiffs in all three cases are represented by the same law firm and have moved to consolidate the three related cases. *See* Mot. to Consolidate (*Wilson* Doc. No. 272).

## IV. DISCUSSION

▆▆ Defendants argue that *Wilson, Harris,* and *Vance* should be transferred to the Northern District of Indiana, Hammond Division, under 28 U.S.C. § 1404(a).[2] In determining whether a transfer of venue pursuant to 28 U.S.C. § 1404(a) is appropriate, district courts engage in a two-part inquiry, asking: (1) whether an action "might have been brought" in the proposed transferee forum, and, if so, (2) whether the transfer promotes convenience and justice. *See MAK Marketing v. Kalapos,* 620 F.Supp.2d 295, 307 (D.Conn. 2009); *see also Forjone v. California,* 425 Fed.Appx. 73, 74 (2d Cir.2011).

### A. *Whether The Case Might Have Been Brought in the Northern District of Indiana*

▆▆ Defendants assert, and plaintiffs do not deny, that all three cases could have been brought in the Northern District of Indiana. *See Wilson* Defs.' Mem. in Supp. 6. To decide whether an action "might have been brought" in the proposed transferee forum, the court must first determine whether the defendants are subject to personal jurisdiction in that forum, and whether venue would properly lie there. *See generally Farrell v. Wyatt,* 408 F.2d 662, 666 (2d Cir.1969). All three defendant corporations are headquartered in the Northern District of Indiana and are subject to general personal jurisdiction there. Venue would thus also be proper in the Northern District of Indiana. *See* 18 U.S.C. § 1965 (making venue proper in

---

**2.** Defendants also move to transfer pursuant to sections 1406(a) and 1631, because they allege that this court lacks jurisdiction over defendants UCC and DB Holdings. *Wilson* Defs.' Mem. in Supp. 2. District courts have the power to transfer venue even when they lack personal jurisdiction over defendants. *See Fort Knox Music Inc. v. Baptiste,* 257 F.3d 108, 112 (2d Cir.2001). Because the court is persuaded that transfer is appropriate under section 1404(a), it is unnecessary to decide the issue under sections 1406(a) and 1631.

any district in which a defendant in a RICO claim "is found, has an agent, or transacts his affairs"); 28 U.S.C. § 1391(c) (making venue proper for corporations wherever the corporation is subject to personal jurisdiction when the action is commenced). Plaintiffs do not appear to argue that the cases could not have been brought in the Northern District of Indiana. Therefore, these cases "might have been brought" in the Northern District of Indiana. 28 U.S.C. § 1404(a).

### B. Whether Transfer Would Promote the Convenience of Parties and Witnesses and the Interests of Justice

■ In the second part of the section 1404(a) inquiry, the court must consider whether a transfer promotes convenience and justice. District courts have broad discretion to make case-by-case determinations of convenience and fairness, *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir.1992) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). In making their determinations, courts consider, *inter alia*, (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–107 (2d Cir.2006); *Hanninen v. Fedoravitch*, 583 F.Supp.2d 322, 331 (D.Conn.2008).

### 1. Plaintiffs' Choice of Forum

■ In considering a motion to transfer, a district court ordinarily affords the plaintiff's choice of forum substantial weight. *See In re Warrick*, 70 F.3d 736,

741 (2d Cir.1995). The Second Circuit "has not definitively answered what effect a plaintiff's representative capacity has on his or her choice of forum," *Gilstrap v. Radianz*, 233 Fed.Appx. 83, 85 (2d Cir. 2007), but has acknowledged that district courts may give less weight to this factor in national class actions. *See In re Warrick*, 70 F.3d at 741 n. 7 (2d Cir.1995); *see also Fairchild v. Eisai*, No. 3:11–CV–452–MRK, 2011 WL 3438408 (D.Conn. Aug. 4, 2011). Three of ten named *Wilson* plaintiffs live in Connecticut, and two of ten named plaintiffs bought memberships to the Connecticut DirectBuy franchise. *See Wilson* Am. Compl. ¶¶ 2–8. No named plaintiff in *Harris* or *Vance* lives in Connecticut or bought memberships in the Connecticut DirectBuy franchise. *See Harris* Compl. (*Harris* Doc. No. 1) ("Harris Compl.") 1; Vance Compl. 1. Plaintiffs have not contested defendants' assertion that a small percentage of putative class members live in Connecticut. *See Wilson* Defs.' Mem. in Supp. 1.

Although plaintiffs' choice of forum is still entitled to some weight, that weight is diminished by the far-flung residences of the named plaintiffs and the intended class in *Wilson*. When plaintiffs choose a forum that is not any plaintiff's home forum, as in *Harris* and *Vance*, that choice of forum is accorded considerably less weight. *See Iragorri v. United Technologies*, 274 F.3d 65, 71 (2d Cir.2001). Therefore, this factor tips only very slightly in plaintiffs' favor.

### 2. Convenience of Witnesses & Availability of Process to Compel Their Attendance

■ Courts in this District have emphasized the importance of the convenience of witnesses in the transfer analysis. *See, e.g., Jones v. Walgreen*, 463 F.Supp.2d 267, 274–76 (D.Conn.2006) (considering at length the convenience of witnesses who

were executives of defendant corporation).[3] Parties seeking consideration of this factor must specify the identity of key witnesses and the nature of their likely testimony, and support these statements with affidavits. *See Factors Etc. v. Pro Arts,* 579 F.2d 215, 218 (2d Cir.1978), *abrogated on other grounds by Pirone v. MacMillan,* 894 F.2d 579 (2d Cir.1990). Courts consider the "materiality, nature, and quality" of these witnesses. *Factors Etc.,* 579 F.2d at 218.

Defendants discuss eight DirectBuy executives who are likely to be key witnesses, all of whom work in Merrillville, Indiana. Defs.' Mem. in Supp. 10. Plaintiffs list no potential witnesses, but argue that the convenience of party witnesses should bear less weight than the convenience of non-party witnesses, and that modern transportation is such that defendants would not be subjected to "undue hardship" by litigating in this court. *Wilson* Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Transfer ("*Wilson* Pls.' Opp'n") 25–26.

Litigating in the Northern District of Indiana would be far more convenient for all of the defendants' witnesses discussed in these Motions. While litigating in the Northern District of Indiana may be less convenient for the three *Wilson* plaintiffs who live in Connecticut, it will be more convenient for the three *Wilson* plaintiffs from California, as well as the *Harris* plaintiffs (from Missouri) and the majority of Vance plaintiffs (from Ohio, Indiana, Texas, Utah, Oklahoma, and Massachusetts). Therefore, this factor weighs in favor of transfer.

Because neither party has identified any non-party witnesses, the availability of process to compel attendance of unwilling witnesses is neutral. *Cf. WorldCare Ltd. Corp. v. World Ins. Co.,* 767 F.Supp.2d 341, 367 n. 2 (D.Conn.2011) (finding this factor to favor transfer even where neither party identified a non-party witness). To the extent that plaintiffs call non-party witnesses, those witnesses are likely to be store employees, who will be as geographically diverse as plaintiffs. On balance, this factor favors defendants.

3. Location of Relevant Documents

Defendants are all headquartered in the Northern District of Indiana, and maintain all documentation at their headquarters. *Wilson* Defs.' Mem. in Supp. 12–13. Plaintiffs argue correctly that modern technology limits the weight of this factor: although the location of relevant documents is entitled to some weight, modern photocopying technology and electronic storage deprive this issue of practical or legal weight. *See Wilson* Pls.' Opp'n 26; *see also Hawley v. Accor North Am.,* 552 F.Supp.2d 256, 259 (D.Conn.2008). This factor therefore weighs slightly, if at all, in favor of transfer.

4. Convenience of Parties

Transfer should not merely "shift the burden of inconvenience from one party to the other." *Pitney Bowes v. National Presort,* 33 F.Supp.2d 130, 132 (D.Conn. 1998). Defendants' convenience would be furthered by transfer to the Northern District of Indiana because they are headquartered in Merrillville, Indiana. Named plaintiffs in *Wilson* reside in Connecticut (three), Alabama (two), California (three), Massachusetts, and New York. They bring action on behalf of "all persons who have purchased memberships" in DirectBuy franchises nationwide from October 11, 2002, through July 30, 2009. *See Wilson*

3. Plaintiffs cite *It's a 10, Inc. v. PH Beauty Labs, Inc.,* 718 F.Supp.2d 332 (S.D.N.Y.2010), for the proposition that non-party witnesses are more important to the transfer analysis than party witnesses. Plaintiffs have not identified any non-party witnesses in opposing the Motions to Transfer in *Wilson, Harris,* or *Vance.*

Am. Compl. ¶ 1. Named plaintiffs in *Harris* reside in Missouri; named plaintiffs in *Vance* reside in Indiana, Ohio, Massachusetts, Texas, Utah, and Oklahoma. Whether court proceedings occur in Connecticut or Indiana, a large group of named plaintiffs (and putative class members) will need to travel a great distance to attend or to testify. Because the inconvenience to the named and member plaintiffs as a group would be substantially the same regardless of venue, and the inconvenience to defendants as a group would be greatly diminished by transfer, this factor weighs in favor of transfer.

### 5. Locus of Operative Facts

■ "The locus of operative facts is an important factor to be considered in deciding where a case should be tried." *MAK Marketing, Inc. v. Kalapos,* 620 F.Supp.2d 295, 310 (D.Conn.2009) (citing *800–Flowers v. Intercont'l Florist,* 860 F.Supp. 128, 134 (S.D.N.Y.1994)). To determine the locus of operative facts, courts look to where "the events from which the claim arises" occurred. *Verilux v. Ottlite Technologies,* No. 09–CV–00717–JCH, 2009 WL 2710222 at \*5 (D.Conn. Aug. 20, 2009). Plaintiffs' allegations center on defendants' alleged receipt of kickbacks from manufacturers and suppliers, raising the "direct" prices promised to members. *See generally Wilson* Am. Compl.; Harris Compl.; Vance Compl. Plaintiffs claim that defendants, acting in conjunction with franchisees, are responsible for kickbacks and markups, and that defendants promulgated promotional materials and pricing to franchisees. *See, e.g., Wilson* Am. Compl. ¶¶ 30–35. Based on plaintiffs' allegations, the locus of many operative facts is Merrillville, Indiana, where all three defendant corporations are headquartered and operate. The locus of the remaining facts are spread among at least thirty states where DirectBuy has franchises. This factor supports transfer.

### 6. Relative Means of the Parties

Courts may consider the relative financial hardship to litigants in prosecuting or defending an action in a particular forum. *See MAK Marketing, Inc. v. Kalapos,* 620 F.Supp.2d 295, 311 (D.Conn.2009) (citing *Hawley v. Accor N. Am., Inc.,* 552 F.Supp.2d 256, 260 (D.Conn.2008)). Defendants argue that transfer would minimize financial burden on them, both in terms of travel cost and of time spent away from the office. *See Wilson* Defs.' Mem. in Supp. 15–16. Defendants further argue that transfer would not create any financial hardship for plaintiffs, because plaintiffs have not attended court proceedings and plaintiffs' attorneys regularly litigate class actions across the country. *Id.* at 16. Plaintiffs do not address the relative means of the parties.

The court declines to adopt defendants' assumption that, because plaintiffs have not attended court proceedings in the past, they will not do so in the future. Even if plaintiffs were to attend court proceedings, however, many of them would be forced to travel great distances to do so regardless of venue. *See supra* at 517, 517–18.

Under this factor, courts have also considered whether one or more parties are corporations. *See, e.g., Hawley,* 552 F.Supp.2d at 261 (finding that individual plaintiffs against a nation-wide business "clearly and strongly weighs against transfer"); *Argent Funds Group v. Schutt,* 3:05–CV–1456–SRU, 2006 WL 2349464 at \*4 (D.Conn.2006) (considering whether defendant individual would necessarily face financial hardship in litigating against a large corporation). Defendants assert that litigating in Connecticut would "unduly burden DirectBuy's business operations." *Wilson* Defs.' Mem. in Supp. 15 n. 6. Plaintiffs argue that defendants will not be subjected to undue hardship, *Wilson* Pls.'

Opp'n 26, but do not argue that plaintiffs would be burdened by litigating in Indiana.

The court concludes that, although it would clearly be a greater burden for DirectBuy to litigate in Connecticut than Indiana, they have not shown that the burden would be undue. This factor does not weigh in favor of either party.

### 7. The Forum's Familiarity with Governing Law

Defendants correctly state that this court and the Northern District of Indiana are equally capable of applying the relevant law. *Wilson* Defs.' Mem. in Supp. 16. *Wilson* plaintiffs make claims under federal law and state common law fraud, as well as under thirty states' consumer protection statutes, including both Connecticut and Indiana. *See Wilson* Am. Compl. 22. *Harris* plaintiffs make claims under Missouri consumer protection law. *See* Harris Compl. 6–7. Vance plaintiffs make claims under Indiana, Ohio, Massachusetts, Utah, Texas, and Oklahoma statutory and common law. Vance Compl. 11–19.

■ Federal courts are presumed to be equally familiar with federal law. *See WorldCare Ltd. v. World Ins.*, 767 F.Supp.2d 341, 366 n. 49 (D.Conn.2011) (finding this factor neutral because plaintiff made claims under federal law, as to which federal courts are presumed equally competent). Moreover, this court, like the District Court of the Northern District of Indiana, is not in a privileged position with regard to the interpretation of the statutory or common law of twenty-nine other states. *Cf. Pitney Bowes v. National Presort*, 33 F.Supp.2d 130, 132 ("In any event, federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State") (D. Conn. 1998). This is therefore a neutral factor.

### 8. Trial Efficiency and the Interests of Justice

This final factor is "broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." ' *Charter Oak Fire Ins. v. Broan–Nutone, L.L.C.*, 294 F.Supp.2d 218, 222 (D.Conn.2003) (citing *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y. 1967)). The parties' filings address several points not covered by the factors addressed above, including delay, estoppel, forum shopping, and this court's personal jurisdiction over defendants in *Wilson, Harris,* and *Vance.*

### a. Trial efficiency, delay, and consolidation

Plaintiffs argue that it would be inefficient to transfer these cases to the Northern District of Indiana because this court is familiar with the *Wilson* case from considering and ruling on the proposed nationwide settlement. *Wilson* Pls.' Mem. in Opp'n 24. This case was referred to Magistrate Judge Garfinkel for mediation shortly after it was filed. *See Wilson* Joint Mot. for Referral. The case stayed with Judge Garfinkel until March 2011. The Motion for Settlement was denied in May. *See Wilson* Ruling Den. Mot. for Settlement. After that Ruling, plaintiffs amended their Complaint in *Wilson* and have filed a Motion to Consolidate Cases and to File First Amended Consolidated Complaint. *See generally Wilson* Am. Compl.; Mot. to Consolidate.

There are significant differences between the initial *Wilson* Complaint and the First Amended Class Action Complaint, the Harris Complaint, and the *Vance* Complaint. *Wilson* plaintiffs make new claims for common law fraud and for violation of the consumer protection statutes of thirty states, and delete a claim for unjust enrichment. The RICO claims against each

of the defendants remain the same. *See Wilson* Am. Compl. The Harris and Vance cases make only state and common law claims that have not yet been before this court. Defendants contend that this case is "at the earliest possible pleading stage on the merits" because time has not yet run for defendants to respond to plaintiffs' Amended Complaint. *Wilson* Defs.' Mem. in Supp. 17. Defendants also suggest that the relevance of any familiarity this court may have with the claims is limited by the significant changes in the Amended Complaint. *Id.* The court agrees with defendants that its familiarity with the case is of limited significance given "the relatively early stage of the proceedings" with regard to the *Wilson* Amended Complaint, the *Harris* and *Vance* Complaints, and the proposed Consolidated Amended Complaint. *Wilson* Ruling Den. Mot. for Settlement 20.

The question of familiarity is closely related to the question of consolidation. Plaintiffs have recently filed a Motion to Consolidate the three related cases pending in this court, *see* Mot. to Consolidate, and a Motion for Leave to File a Consolidated Complaint (*Wilson* Doc. No. 273). Defendants have moved to transfer all three cases pending in this District to the Northern District of Indiana, and have also moved to transfer two cases pending elsewhere in the country. *See Wilson*

Defs.' Mem. in Supp. 18. "The interest of justice may be served by transferring a case to facilitate its consolidation with other cases arising from the same conduct." *Lincoln National Life Ins. v. Aon Re,* No. 3CV00905–RNC, 2004 WL 115211 at *1 (D.Conn. Jan. 21, 2004) (citing *Wyndham Associates v. Bintliff,* 398 F.2d 614, 619 (2d Cir.1968)). Consolidation permits efficiencies in pretrial discovery and can help to avoid duplicative litigation and inconsistent results. *See id.* The parties agree that consolidation of similar pending actions against defendants would promote efficiency, but disagree as to where the cases should be consolidated.[4] *See Wilson* Pls.' Opp'n 25; Defs.' Mem. in Supp. 19. Because the cases could only be consolidated in a court that has personal jurisdiction over all parties, the question of jurisdiction over defendants in the related cases is addressed briefly below.[5]

■ Defendants raise serious concerns as to this court's jurisdiction over them in *Harris* and *Vance.* To establish personal jurisdiction over a non-resident corporation, a plaintiff must show that (1) Connecticut's long-arm statute reaches the defendants and (2) the exercise of personal jurisdiction does not violate due process. *See Bensmiller v. E.I.Dupont de Nemours & Co.,* 47 F.3d 79, 81 (2d Cir.1995). In Connecticut, foreign corporations are subject to personal jurisdiction in suits by "a

---

4. Although defendants have opposed consolidation in this court, *see* Mem. in Opp'n re Mot. to Consolidate (*Wilson* Doc. No. 280), it does not appear that they necessarily oppose consolidation in the Northern District of Indiana. *See id.* Indeed, the thrust of defendants' arguments in support of their Motion to Transfer are compelling arguments for consolidation in that court.

5. Plaintiffs also argue that defendants have waived any objection to this court's exercise of personal jurisdiction over them in *Harris* and *Vance* by defendants' prior actions in *Wilson. See Wilson* Pls.' Opp'n 10–15. As-

suming, without deciding, that defendants' participation in settlement proceedings before this court and their request to stay cases pending in other districts during those proceedings waived defendants' personal jurisdiction defense—an assumption this court has doubts about given the procedural posture of the *Wilson* pre-settlement—such a waiver would not apply to *Harris* or *Vance. See Town of East Haven v. Eastern Airlines,* 282 F.Supp. 507, 511 (D.Conn.1968) (finding that a possible waiver of a personal jurisdiction defense in prior cases had no effect on the defendant's right to raise such a defense in the case being decided).

resident of this state or by a person having a usual place of business in this state" based on the foreign corporation's business or activities in Connecticut. CGSA § 33–929(f). Foreign corporations that transact business here without a certificate of authority from the Secretary of State are subject to personal jurisdiction in suits arising out of that business. CGSA § 33–929(e).

Janice and Lacey Harris, on behalf of everyone who has purchased a DirectBuy membership in Missouri within the statute of limitations, allege that DirectBuy, UCC, and DB Inc. violated a Missouri consumer protection statute in Missouri, by their actions in Indiana and their franchisee's actions in Missouri. *See Harris* Compl. Brian Vance of Ohio, Tyrone Gillispie of Indiana, Thomas Boettcher of Texas, Michael Nope of Utah, William Fisher of Oklahoma, and Joel Machado of Massachusetts sued defendants on behalf of DirectBuy members in Ohio, Indiana, Texas, Utah, Oklahoma, and Massachusetts respectively, under those states' consumer protection statutes, and for actual and constructive common law fraud. *See* Compl. (*Vance* Doc. No. 1).

As far as this court is aware, none of the named plaintiffs in *Harris* or *Vance* lives in Connecticut or has a usual place of business in Connecticut. Therefore, section 33–929(f) does not establish personal jurisdiction over defendants in these cases. Thus, to bring suit in Connecticut, plaintiffs must establish jurisdiction under section 33–929(e).

 "To establish jurisdiction under § 33–929(e), a plaintiff must establish that the defendant corporation transacted business in Connecticut without a valid certificate of authority from the Secretary of State." *Hajela v. ING Groep,* 582 F.Supp.2d 227, 235 (D.Conn.2008) (citing Conn. Gen.Stat. § 33–920(a)). Once a plaintiff establishes that the defendant corporation meets this prerequisite, a plaintiff "must establish that its cause[ ] of action arises out of the business that the foreign corporation conducted in Connecticut." *Ebm–Papst v. AEIOMed,* No. 3:08–CV–0549–JCH, 2009 WL 291012 at *3 (D.Conn. Feb. 6, 2009). A cause of action arises out of the transaction of business where the litigation "bears some connection with the business conducted by the foreign corporation in this state." *Lombard Bros., Inc. v. General Asset Management Co.,* 190 Conn. 245, 253, 460 A.2d 481 (1983).[6]

 The plaintiffs in *Harris* and *Vance* claim that each of the three defendants transacted business in Connecticut without a valid certificate of authority. *See* Pls.' Mem. in Opp'n to Defs.' Mot. to Transfer Venue 6 (*Harris* Doc. No. 20) ("Pls. *Harris* Opp'n"); Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss 12 (*Vance* Doc. No. 39) ("Pls. *Vance* Opp'n"). Plaintiffs support this allegation by citing the failure of defendants to deny that they did not hold a certificate.[7] *See* Pls. *Harris* Opp'n

---

**6.** In *Lombard,* the Connecticut Supreme Court discussed Conn. Gen.Stat. section 33–411(b), which provided for jurisdiction over corporations that transacted business in Connecticut without a certificate of authority for causes of action arising out of that business. *See Lombard,* 190 Conn. at 250, 460 A.2d 481. The court noted that the "arising out of" language in this part of the statute has always been interpreted to require a connection between the litigation and the corporation's business in the state. *Id.* Section 33–411(b) was later re-styled as Conn. Gen.Stat. section 33–929(e). *See On–Line Technologies v. Perkin Elmer Corp.,* 141 F.Supp.2d 246, 267 (D.Conn.2001) (noting that section 411(b) is the predecessor to section 929(e)).

**7.** It is doubtful that this allegation is sufficient as a matter of law as to UCC and DB Holdings. In Connecticut, the use of a subsidiary to transact business is not sufficient to subject a nonresident parent corporation to the jurisdiction of the forum in which that business is transacted. *See Hersey v. Lonrho, Inc.,* 73

7; Pls. *Vance* Opp'n 12. However, even if this court accepts, for the purposes of this Ruling only, that plaintiffs have alleged facts that meet the high bar of "transacting business,"[8] they must still show that their causes of action arise out of activity by defendants in Connecticut.

The court has very serious questions as to the basis for jurisdiction over defendants UCC and DB Holdings, even in the *Wilson* case. Even the plaintiffs seem to acknowledge that the cause of action must be of the type that defendants would anticipate arising out of their Connecticut activities to support jurisdiction under section 33–929(e). *See Wilson* Pls.' Opp'n 16. The allegations against UCC pertaining to its Connecticut activities relate to it primarily as a trademark holder.[9] *See Wilson* Am. Compl. 5, 6. Plaintiffs' claims do not arise out of, or are not reasonably of the type that defendant UCC would expect to be brought against it in Connecticut based on, the use of its trademark in Connecticut. The claims against DB Holdings appear to rest on its status as the owner of UCC. *See Wilson* Am. Compl. 20. The presence of a subsidiary in Connecticut is legally insufficient, on its own, to establish jurisdiction over the parent corporation in Connecticut. *See supra* at n. 5.

Assuming DirectBuy were subject to jurisdiction in this court, but UCC and DB Holdings were not, the result could be trial against one defendant in one state and against two defendants in another state. Such an outcome would clearly weigh in favor of transfer to the one state were the claims against all defendants could be considered and consolidated. Even absent consolidation of these three cases, as well as the two cases pending in other districts,[10] by the transferee court in such a scenario, this court nonetheless finds that having all three cases before the same judge would advance efficiency and lower costs. Therefore, if this court lacks jurisdiction over any defendant in any of the three pending cases, this factor heavily favors transfer.

Even if the court assumes that there is jurisdiction over all three defendants in all three cases in Connecticut, this factor would not favor plaintiffs. With jurisdiction over all parties, concerns about efficiency and the interests of justice would be neutral as between this court and the District Court of the Northern District of Indiana, which are equally well situated to hear the cases. However, if there is no jurisdiction over any defendant in *Harris* and *Vance*, or over two of the defendants in *Harris* and *Vance*, this factor weighs very heavily in favor of transfer, as efficiency and the interests of justice are greatly advanced if all the claims, against all defendants, are before the same court, and presumably the same judge.

Conn.App. 78, 82, 807 A.2d 1009 (2002). "In order to establish jurisdiction based on the presence of a subsidiary, the parent corporation must fully control the subsidiary corporation such that the corporate veil is pierced." *American Wholesalers Under. v. American Wholesale*, 312 F.Supp.2d 247, 255 (D.Conn. 2004). No allegations are made that would plausibly support a claim to pierce the corporate veil. *See generally Angelo Tomasso, Inc. v. Armor Const. & Paving*, 187 Conn. 544, 552–54, 447 A.2d 406 (1982) (discussing the type of proof required for courts to disregard corporate structure).

8. The long-arm provision for corporations takes a narrower view of transacting business than the long-arm provision for individuals. *See Ryan v. Cerullo*, 282 Conn. 109, 128–29, 918 A.2d 867 (2007).

9. Although the Amended Complaint also discusses UCC's role in ordering merchandise, it does not allege that any such activity took place in Connecticut.

10. *Jamila Swift, et al. v. DirectBuy, Inc., et al.*, No. 1:09–cv–4067–FB–VVP (E.D.N.Y.); *Ganezer, et al. v. DirectBuy, Inc., et al.*, No. 2:08–cv–08666–GAF (RCx) (C.D.Cal.).

### b. Estoppel

▓▓ Plaintiffs argue that defendants are estopped from trying to transfer *Wilson* because they argued against transferring *Wilson* before the Panel on Multi–District Litigation ("MDL"), and because they requested and obtained stays of other pending cases while they negotiated settlement in *Wilson*. Pls.' Opp'n 21–24. "The doctrine of judicial estoppel prevents a party from taking a factual position in a legal proceeding that is contrary to a position previously taken by [the party] in a prior legal proceeding." *Bates v. Long Island R.R.*, 997 F.2d 1028, 1037 (2d Cir. 1993). To invoke judicial estoppel, a party must show that "(1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as rendering favorable judgment." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999). The two positions must be clearly inconsistent. *See S.E.C. v. DiBella*, 409 F.Supp.2d 122, 135 (D.Conn. 2006).

▓▓ As to the first factor, defendants' opposition to transfer before the MDL Panel is not clearly inconsistent with their present position in favor of transfer. At the time of the MDL Panel's decision, the parties were engaged in settlement negotiations before a judge in this District. In addition to this difference in procedural posture, the legal considerations that support transfer under section 1404(a) are different from those under section 1407. *See, e.g., In Re Regents of University of California*, 964 F.2d 1128, 1133 (Fed.Cir. 1992) ("The considerations pertinent to a change of venue under § 1404(a) are not the same as those pertinent to coordination of pretrial proceedings in multiple cases involving common parties.").

As to the second factor, it does not seem that the Panel adopted defendants' position in its decision not to transfer these cases. The decision mentions the positions taken by defendants twice in its brief Order Denying Transfer: once to decline to rely on "defendants' apparent preference to negotiate with certain plaintiffs' counsel over counsel for other plaintiffs," and once to note that "[d]efendants and some of the plaintiffs oppose centralization as unnecessary." MDL Panel Order Den. Transfer 1–2. However, the basis of the Panel's Ruling is the complexity and numerosity of common factual questions. *Id.* at 2. Thus, even were this court convinced that defendants took fundamentally inconsistent positions in arguing against transfer before the panel and for transfer here, defendants would not be estopped from arguing against transfer.

### 9. The Relevant Factors Favor Transfer

Only one of eight factors considered weighs against transfer, and it does so only slightly: the *Wilson* plaintiffs' choice of forum. The relative means of the parties and the transferring and transferee courts' familiarity with governing law weigh neither in favor of nor against transfer. All of the other factors weigh either slightly or heavily in favor of transferring these cases to the Northern District of Indiana. The convenience of witnesses, both parties and non-parties, favors transfer, as does the location of relevant documents and evidence, if only slightly. The convenience of the parties favors transfer, where litigating would be much more convenient for defendants and equally inconvenient for plaintiffs as a group. The locus of operative facts likewise favors transfer, as do considerations of efficiency and the interests of justice. On balance, and considering all of the relevant factors, the court finds that defendants have met their burden of showing that the relevant factors strongly favor transfer of all three cases to the Northern District of Indiana.

## V. CONCLUSION

For the foregoing reasons, including both parties' interest in consolidating the *Wilson* case with *Harris* and *Vance*, defendants' Motion to Transfer Venue is **GRANTED**.

**SO ORDERED.**